Dale E. Robinson, Plaintiff-Appellant, v. Community Unit School District No. 7, Defendant-Appellee.

Gen. No. 62–F–18.

Fourth District.

April 19, 1962.

Eldon M. Durr, of Edwardsville, for appellant.

John D. Morrisey, Jr., of Edwardsville, for appellee.

HOFFMAN, PRESIDING JUSTICE.

Plaintiff Dale E. Robinson was dismissed as a teacher by the Board of Education of Community Unit School District No. 7, Madison County, Illinois. At the time, he was engaged in contractual continued service under the Teacher Tenure Law and was employed as a shop teacher in old Junior High in Edwardsville, Illinois. On administrative review before the Circuit Court of Madison County, the Circuit Judge affirmed the decision of the Board. This appeal is brought by the dismissed teacher, and he asks that we reverse the Circuit Court and reinstate him to his position as a teacher with back pay.

The plaintiff had been employed as a teacher in the district school system for 10 years. He had taught 15 years all told. His dismissal came on May 20, 1960 after a public hearing which commenced May 2, 1960 and continued until May 8, 1960. Thirty-five witnesses testified at the hearing and the record filed herein is voluminous. The Board, in its resolution of dismissal, stated it was discharging the teacher "for the reason that Dale E. Robinson (the teacher) has exhibited and pursued a course of non-cooperation with his fellow teachers and his superiors over a long period of time."

It is contended by the plaintiff teacher in this appeal that he didn't have a fair trial, that the Board's findings were not supported by the evidence, and that the Board lacked jurisdiction to hear the matter inasmuch as the charges were remedial in nature and under the appropriate statutory provisions, he was entitled first to receive a letter of warning giving him an opportunity of removing the alleged causes.

See similar present provisions in Ill Rev Stats 1961, chap 122, par 24–12.

The written charge of noncooperation made against the teacher contained 20 specific allegations of noncooperation, including the following: throwing paper towels from the window of a third floor washroom, tampering with his classroom clock, interfering with the discipline and control of other teachers, monitoring a washroom in defiance of his superiors, refusal to allow assigned reading in his study hall, confiscation of permitted books from students, refusal to attend luncheon meetings, making derogatory remarks about the discipline of the school, holding his classes after the end of the period and refusing to write tardy slips for his students, accusing a previous Superintendent of "scalping" tickets, inability to work with other teachers, and refusal to keep the noise of his shop down.

It was not contended by the Board, nor was there any proof, that plaintiff Dale E. Robinson was not a competent teacher, nor was there any proof that any aspect of his conduct was immoral.

When the entire testimony is reviewed and analyzed, the most significant conclusion reached is that there was a strong feeling of noncooperation existing between the plaintiff and Robert Eberle, the school principal, as well as between plaintiff and a number of the other teachers. This was true regardless of where the actual fault lay.

Eleven teachers appeared at the hearing to testify against Mr. Robinson. Their testimony contained many generalities and conclusions and oftentimes there were no specific instances given to support the conclusions they had. Some of the witnesses brought out that plaintiff often remarked that the discipline at the school was poor, and that he was the only one doing anything about it. This alone certainly would not be

sufficient cause for dismissal, and it could well be that what he said was true. Some of the teachers related that his classes left his shop room late and that plaintiff failed to make out tardy slips for these late students. But one of the teachers who testified against Mr. Robinson admitted that she, too, had kept students after her class without making out the tardy slips for them. Plaintiff, it was said, failed to attend some of the luncheon meetings of the teachers. At the hearing he explained that this was due to the fact that he couldn't eat all the food there; that at one time he had "rotten" fish served at the school cafeteria and that he had a nervous stomach condition. He had not, however, ever made this known to his superiors for the purpose of being excused. One of the teachers who testified against plaintiff, admitted that she, herself, resented other teachers interfering with her classes or saying anything that she did was undesirable.

In connection with the charge of throwing paper towels from the third floor washroom window, testimony was given by the school principal, Mr. Robert Eberle, that he positively saw Mr. Robinson throw a wet towel from the window on one occasion in January of 1960. Mr. Robinson made a flat denial of having ever done so. While the incident by itself might not be of great import, the accusation by the principal and denial by the teacher would be. The Board was compelled to choose between the testimony of these two witnesses; and, in so doing, it must have held that one spoke the truth while the other was lying. This situation would be more serious than the incident itself. This accusation and denial creates a situation that would be detrimental to the school if permitted to remain unheeded.

The Superintendent of Schools, Mr. A. Gordon Doods, said in substance that he had found Mr. Robinson "antagonistic" on many occasions.

The principal of the school, Mr. Robert Eberle, further stated that he couldn't use Mr. Robinson's services in a group planning situation as he had to assign him tasks which wouldn't place him in contact with other faculty members; that plaintiff's actions were a source of discontent to other members of the faculty and that he often snickered and bickered at faculty meetings; that other teachers complained to the principal about his mannerisms and snickering, and that he, as principal, couldn't work with Mr. Robinson. He said that Mr. Robinson was concerned over the discipline and that the two of them had different ideas about discipline. He complained that Mr. Robinson wouldn't cooperate, and in conclusion he gave his opinion that it would be to the best interests of education at the Junior High if Mr. Robinson was removed from the faculty.

Witnesses who testified for Mr. Robinson included a personal friend who had taught at the school 5 years prior to the hearing; a former principal of the same school who had himself resigned and who was no longer teaching; an eighth grade girl; two high school freshmen boys; a high school senior boy; a neighbor of 10 years acquaintanceship; three or four persons who had known him through his Boy Scout work; and a couple of his friends. Their testimony was to the effect that plaintiff was cooperative; that he had good discipline when they saw him; that he had the respect of the boys; that he had never acted peculiar and had always behaved in a normal manner; that he kept good order and was not argumentative; and that he was strict but was fair. These witnesses furnished the testimony which would have supported the Board had it decided in favor of the teacher. It would have been more effective, however, if other teachers who actually were working with Mr. Robinson at the school had testified to their approval of his conduct and

demeanor based on their observations of him while serving as a teacher at the school.

█ While the proof of the specific charges was weak in many instances and while the disagreements and dissensions between plaintiff and several of the other teachers was not shown by the evidence to have been solely Mr. Robinson's fault, nevertheless, it is clear that there was an atmosphere of unpleasantness between the plaintiff and a number of the members of the faculty, including the principal. It is apparent, too, that this feeling had been growing for a number of years and reached a point where it could reasonably be said to be no longer remedial in nature.

The strained relationship existing between this plaintiff and his principal, when reviewed in the light of the similar relationship existing between him and various other members of the faculty, was not conducive to the best interests of the school. Without our placing all the blame on the plaintiff, it appears that it would be within the Board's right to call a halt to the trouble by taking the action it did. There was evidence to support a finding that Mr. Robinson's conduct could have been a contributing cause to the lack of harmony that existed in the school faculty.

█ The best interests of the school is the principal concern in a hearing of this kind. It was pointed out in Jepsen v. Board of Education, 19 Ill App2d 204, 153 NE2d 417, the statute on dismissal is silent as to what constitutes cause, and that therefore the right to determine the question in the first instance is in the tribunal having jurisdiction of the teachers. In that case, the Appellate Court for the Second District approved the Board's dismissal of a teacher who had stated at a teachers' institute that his school was using an ineligible player in sports, thus casting a reflection on the school's integrity. The court quoted from Meredith v. Board of Education of Community Unit

School Dist. No. 7, 7 Ill App2d 477, 486, 130 NE2d 5, 10 to the effect that the *best interest of the schools* of the district is the guiding star in such cases.

In Pearson v. Board of Education, 12 Ill App2d 44, 138 NE2d 326, the Appellate Court for the Third District affirmed the discharging of a teacher. The charge was that due to the teacher's temper, he failed to properly cooperate with the administration, his fellow teachers and students. The court pointed out that under the statute the Board may dismiss for incompetency, cruelty and the like, but that it also had power to dismiss whenever in its opinion *the interests of the school* required it. The court stated that the statute was silent in spelling out what constituted a cause for dismissal other than those listed and that under the circumstances the determination of whether there was failure to cooperate would be left in the discretion of the Board. The court held that the finding by the Board that the teacher had failed to cooperate was not against the manifest weight of the evidence.

The plaintiff here relies mainly on the case of Allione v. Board of Education of South Fork Community High School Dist., 29 Ill App2d 261, 173 NE2d 13. In that case, a teacher was charged with insubordination and was dismissed. The Circuit Court confirmed the dismissal, but the Appellate Court for the Third District reversed and reinstated the teacher on the grounds that the evidence was insufficient to establish insubordination; and, secondly, that the Board was wrong in holding that the causes for the dismissal were not remedial. While this case has similarity to the case before us, nevertheless, it is to be noted that the court found that there was no evidence of any criticism of the teacher having ever been voiced by the administrative head of the school. Too, prior to the dismissal, the Board had voted to rehire the teacher at an increase in salary. Through a mistaken notion

in the law, the Board thought the teacher didn't want his job and hired a replacement. After learning that the teacher expected to stay on, they voted to dismiss her and the court remarked "we think it reasonably indicates that the action taken to discharge plaintiff was not initiated for the reasons assigned."

The court in the Allione case further held that the charge of insubordination was remedial as the term is used in the Teacher Tenure Law and, too, that the Appellate Court could review the Board's finding that a certain cause is not remedial, citing Hauswald v. Board of Education of Community High School Dist. No. 217, 20 Ill App2d 49, 155 NE2d 319.

■ It could well be that failure to cooperate would be, in many cases or even in most cases, remedial in nature. However, where the trouble has existed for a period of years as it did here, and where it has instilled in the minds of a number of the faculty members, including the principal, a feeling of futility in extending any efforts towards having a spirit of cooperation, then it could well be that it has lost its remedial nature. In such case, the Board would be within its rights to so find it was not remedial. We do not think that the Board clearly erred in finding that the charges were not remedial.

■ We have found it necessary to go to the record itself in reviewing much of the testimony. The plaintiff was given an opportunity to explain explicitly his side of every charge. We have no right to upset the Board's decision without a finding that it acted arbitrarily. This we cannot do.

The action of the trial court is affirmed.

Affirmed.

CULBERTSON and SCHEINEMAN, JJ., concur.