85 Ill. App.2d 312 (1967)
230 N.E.2d 6
Winifred Wells, Plaintiff-Appellee,
v.
Board of Education of Community Consolidated School District No. 64 Cook County, Illinois.
Gen. No. 51,607.
Illinois Appellate Court  First District, Third Division.
June 29, 1967.
*313 Ancel, Stonesifer, Glink & Levin, of Chicago (Louis Ancel, Marvin J. Glink and James K. Stucko, of counsel), for appellant.
*314 Ligtenberg, Goebel & De Jong, of Chicago (John Ligtenberg, Andrew J. Leahy and Mary Lee Leahy, of counsel), for appellee.
MR. JUSTICE DEMPSEY delivered the opinion of the court.
This is an appeal pursuant to the Administrative Review Act (Ill Rev Stats, c 110, §§ 264-279 (1963)) to review a judgment of the Circuit Court. The court reversed the decision of the Board of Education of Community Consolidated School District No. 64, Cook County, Illinois, which discharged the plaintiff, Winifred Wells, a teacher in the school district.
In this court the board makes two contentions: its order of dismissal was not contrary to the manifest weight of the evidence and the causes upon which the dismissal was predicated were irremediable. The principal issue in the appeal revolves around this second contention for the trial court found that the causes were remediable, and that the board, therefore, lacked jurisdiction to discharge the plaintiff because it had not complied with the statute requiring that a teacher be given written warning of specific causes which, if not corrected, might result in charges against her.
Prior to the time when the plaintiff was hired by the board she had received extensive training and experience as a teacher of children of retarded intellectual development. In 1961 she applied to the board for assignment to a class of educable mentally handicapped children (whose mental abilities do not extend beyond 4th or 5th grade subject matter). She was hired as a teacher of trainable mentally handicapped children (who generally are incapable of reading or arithmetic computation), commonly called a TMH class. Before her contract expired in 1962 the superintendent of the school district recommended to the board that she be reemployed. The board followed his advice. Early in 1963 the superintendent *315 explained to the board that the plaintiff, having served two years as a probationary teacher, could not be rehired without qualifying her for contractual continued service, or tenure, under the School Code of 1961; and he, the principal of the plaintiff's school and the assistant to the principal all urged that she not be rehired. The board disregarded their objections and offered her a contract which she accepted. One year later, in February 1964, the superintendent renewed his objection and, at a meeting on March 18, 1964, the board adopted a resolution that the plaintiff's services be terminated at the end of the school year and that she not be reemployed.
The board listed several reasons for its decision and stated that the causes for the dismissal of the plaintiff were not remediable. Notice of the board's decision was sent to the plaintiff and she requested a public hearing and a bill of the particulars. The bill was furnished, hearings were conducted and on July 30, 1964, the board passed a resolution setting forth its findings of fact and its conclusions that the plaintiff be dismissed for incompetence, that her incompetence was irremediable and that the best interests of the school district required her dismissal.
[1-3] Whether or not the causes for dismissal are irremediable is a question of fact whose initial determination lies within the discretion of the board; but a court of review must determine whether the board's finding is against the manifest weight of the evidence. Hauswald v. Board of Education of Community High School Dist. No. 217, 20 Ill. App.2d 49, 155 NE2d 319 (1958); Allione v. Board of Education of South Fork Community High School Dist. No. 310, 29 Ill. App.2d 261, 173 NE2d 13 (1961). A cause for dismissal is irremediable where damage has been done to the students, the faculty or the school itself and the damage could not have been corrected if warnings had been given by the *316 teacher's superiors when they learned of the cause. Cf. Werner v. Community Unit School Dist. No. 4, 40 Ill. App.2d 491, 190 NE2d 184 (1963).
A board of education may:
"... dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause and... dismiss any teacher, whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it. .. ." Ill Rev Stats, 1963, c 122, par 10-22.4.
Before the power of dismissal may be exercised against a teacher with tenure, the board must comply with the statutory procedure specified in section 24-12 of the School Code. Miller v. Board of Education of School Dist. No. 132, Cook County, 51 Ill. App.2d 20, 200 NE2d 838 (1964). In relevant part that section provides:
"Notwithstanding the entry upon contractual continued service, any teacher may be removed or dismissed for the reasons or causes provided in Section 10-22.4.... If the dismissal or removal is ... [for a reason or cause other than the diminishing of the number of teachers or types of teaching services] it shall not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, if a hearing is requested in writing by the teacher.... Written notice of such charges ... shall be served upon the teacher.... Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges...." Ill Rev Stats, 1963, c 122, par 24-12.
The notice sent the plaintiff contained a list of seven "reasons for ... dismissal." The reasons were:

*317 "(1) The teaching activities carried on in the classroom by Winifred Wells are not designed to promote the growth of the pupils, but are of the `baby sitting' type.
"(2) Winifred Wells has not followed the directions for each pupil as listed in the report of the psychologist.
"(3) Winifred Wells has not been concerned with the educational growth of her pupils. Her journals of the activities of each pupil say in many instances, `Had a good day,' or `Had a bad day,' with no indication of the tasks planned for the pupils nor the reaction of the pupils of these specific tasks.
"(4) Winifred Wells has consistently been unable to profit from all of the attempts to help her improve her program made by those responsible for supervision, including the principal, director of special education, psychologist, superintendent, and state supervisor of TMH rooms. The conferences which were held were pleasant, but there was no evidence that she put any of the suggestions to good use.
"(5) Although Winifred Wells is a veteran teacher with many years experience and training at Columbia University, her classroom and her educational program show no evidence that any of this training or experience is put to use. In other words, her performance is much like that of a beginning teacher.
"(6) That the interests of this School District require her dismissal.
"(7) That by reason of the numerous conferences held with Winifred Wells concerning the dissatisfaction of the administration with her teaching skills and performance, and the unsuccessful efforts made *318 to improve her work, and the warning given her, this Board finds that the causes for the removal of Winifred Wells are not remediable."
The reasons for dismissal numbered (2), (3) and (6) are inadequate to that purpose. The psychological reports mentioned in the second reason were excluded from evidence and neither the psychologist nor anyone else testified to the nature of his recommendations; hence, there is no evidence that the plaintiff deviated from his instructions, much less of any irremediable deviations. Moreover, the plaintiff testified that she referred to the reports and used them with the children. The unsophisticated content of the behaviour journals which the plaintiff kept for each of her students constituted the basis for the third charge. She utilized the same method of making entries from September 1963 through February 1964, and there is no evidence that during this period she was given a direction, either oral or written, to change her method or that she was shown a prescribed way to make them. Since this part of her teaching duties was ministerial, her failure to perform the task differently could not have harmed the quality of her teaching, and nothing in the record suggests that she would not have complied with a demand from her superiors that the journal entries be more detailed. Insofar as the board relied on this charge to support its conclusions that the plaintiff was irremediably incompetent and that the best interests of the school required her dismissal, its finding is inconsonant with the manifest weight of the evidence. The sixth reason for dismissal is not a specific charge; it merely repeats verbatim one of the causes of dismissal listed in section 10-22.4 of the School Code. Section 24-12 of the code requires that the dismissal of a teacher with tenure be based upon specific charges; the unamplified sixth reason is, therefore, insufficient. *319 Contra, Pearson v. Board of Education, 12 Ill. App.2d 44, 138 NE2d 326 (1956).
The remaining charges generally develop various facets of a single accusation: the plaintiff was unable and unwilling to administer individualized training and discipline which would challenge the children to develop their full potential and instead applied herself solely to their physical care and amusement. The evidence introduced to support the accusation was related to the plaintiff's alleged failure to mold her teaching to a "Curriculum Guide" published by the Illinois Superintendent of Public Instruction. The purpose of the "Curriculum Guide" is to assist teachers of mentally handicapped children to determine what goals in education, self-care and social adaptability the children can achieve and the ways in which they can be aided in achieving them; consequently, the program outlined in it is quite broad and must be implemented by specific experiences planned by the teacher.
The director of an area program for exceptional children testified that, in her opinion, a classroom schedule or guide prepared and used by the plaintiff was not specific enough to be acceptable as a curriculum for a TMH program.
The superintendent, although stating that he relied primarily upon the principal for his information about how the plaintiff taught, testified that he had several conversations with her and also observed her teaching, that she was not well-organized, that her teaching qualifications had deteriorated and that he could observe little correlation between the teaching program she submitted and the teaching she was doing.
The plaintiff's principal testified that he visited her classroom almost daily and frequently made suggestions about the contents and manner of her teaching. Some of his recommendations involved classroom discipline. For example, the plaintiff once left her class while the *320 music teacher was there, and she was reminded that this was against school policy. During some activities she sat beside those children who usually misbehaved and had the rest of her class facing her; she was told to keep all the children seated in front of her so that they could easily see her and the objects shown them. She was also advised to "establish a firmer hand" with some of the boys whose conduct disrupted her teaching. The principal testified further that he had numerous conversations with the plaintiff regarding the objectives of the TMH program and that they discussed at some length the things she could do to improve her program. He assigned the school nurse, the music teacher, the art instructor and the physical education instructor as supplemental teachers in the TMH program and urged the plaintiff to use her special knowledge to help these teachers do their jobs, to supplement the skills they were teaching and to instruct the children as she knew how from her years of experience and training. He testified that the plaintiff did not follow the suggestions he made concerning the children's development, that she stated she disagreed with his suggestions and that she did not comply with the regulations and standards provided by the State. In addition, he testified that she did not follow up the activities of the special teachers and that she did not "establish a firmer hand" as he had asked or teach such basic skills as traffic safety and reading readiness.
The board also heard testimony by the parents of some of the children in the TMH class expressing their dissatisfaction with the progress made by their children.
The board has stressed aspects of the evidence which it contends demonstrate that the plaintiff over a long period of time failed to cooperate with the school administration despite repeated warnings and directions. Her uncooperative attitude, it is argued, caused her *321 incompetence to be irremediable. Very few specific instances exemplifying this alleged attitude in the plaintiff are in the record, and to illustrate her lack of cooperation the board points generally to her failure to embody in her program the norms which her superiors believed it should have contained.
There is no evidence that the plaintiff was given repeated warnings, or even a single warning, that her failure to conform to the teaching program advocated by the superintendent and principal might result in charges against her, and her failure in this regard cannot be viewed as a spirit of hostility and antagonism such as in Robinson v. Community Unit School Dist. No. 7, 35 Ill. App.2d 325, 182 NE2d 770 (1962). Indeed, the evidence supports the conclusion that the plaintiff, although convinced the views of her superiors were erroneous, attempted to comply. Although she told the principal that the special teachers assigned to the TMH program were of limited assistance to her because they lacked training in the teaching of mentally handicapped children, she nonetheless worked with them throughout the year, helping them with their programs, offering them suggestions and giving them moral support. The weight of the evidence also shows that she patiently and conscientiously worked with the unfortunate and difficult children trying to develop their limited ability, helping them to overcome their handicaps, training them in self-care habits and social adjustment with their classmates and others. She also conferred with the parents frequently, accepted some of their suggestions and made use of A B C books, coloring pictures and other materials supplied by them. That she was not uncooperative is further evidenced by a "teacher evaluation sheet" written by the principal about three weeks before her dismissal. The principal noted that her attitude toward her co-workers, parents, pupils and school policy "continues *322 to be good." Although he was critical of her teaching techniques he said she had the training and "know how" for teaching TMH children and said her interest, understanding and acceptance of them continued on a high level. He added that he considered her a very likeable person and believed that the parents and children thought fondly of her.
Although her principal and her other superiors testified that they regarded her as a poor teacher and her classroom program was deficient, there is no evidence in the record that the plaintiff could not have corrected her teaching program and changed its orientation if her superiors had given her a firm program and demanded that she adopt it. Nothing suggests that, had she been warned that her refusal or failure to do so might result in charges, her compliance would not have been complete. Moreover, it appears that the dividing line between compliance and noncompliance may not have been too distinct (and the difference between the competency or incompetency of a teacher assigned to a TMH class not too discernible), for the superintendent in a letter written to the board at the time the reemployment of the plaintiff was being considered stated: "The educational goals for these children are so low and the acceptable skills of performance so weak that it is difficult to know how much better a well-trained, skillful person would perform." Consequently, it would seem that the modification of the plaintiff's teaching program would not have had to be so extensive that it can be said that she would be unwilling to undertake it.
[4, 5] Since the plaintiff's failure to maintain what her superiors thought was proper discipline and control is also of a remediable nature (Smith v. Board of Education of Community Unit School Dist. No. 1, 19 Ill. App.2d 224, 153 NE2d 377 (1958)), we agree with the trial court that the finding of irremediability was against *323 the manifest weight of the evidence and that the plaintiff was entitled to a written warning before being dismissed.
The judgment of the Circuit Court is affirmed.
Affirmed.
SULLIVAN, P.J. and SCHWARTZ, J., concur.