THEODORE KALLAS, Plaintiff-Appellant, *v.* BOARD OF EDUCATION, Defendant-Appellee.

(No. 12113;

Fourth District—December 6, 1973.

Drach, Terrell and Deffenbaugh, of Springfield, for appellant.

Partlow & Arbogast, of Casey, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

The plaintiff appeals from an order of the circuit court of Clark County affirming his dismissal as a tenured teacher by the Board of Education of Marshall Community Unit School District No. C-2. After a public hearing pursuant to Ill. Rev. Stat. 1971, ch. 122, par. 24—12, the Board passed a resolution discharging the teacher. The teacher was found guilty of five charges. They may be epitomized as follows: (1) Failed to control his temper in the classroom to the extent that students were inhibited from freely participating in classroom discussions and laboratory experiments; (2) the students feared reprisal if they did ask questions in the classroom; (3) failure to submit lists of needed laboratory equipment and materials, although frequently requested to do so; (4) failed to place the science storage room in order after requested to do so; and (5) failure to carry on a rapport with students, parents and administrators.

This resolution was passed on May 9, 1972, terminating employment on May 31, 1972.

We deal here with a tenured science teacher whose educational requirements were unquestioned, whose conduct and character in and out of the school was not tainted, whose experience extended through 20 years, whose academic ability as a teacher would appear to be both sincere and dedicated, but whose emotional self-control was wholly insufficient to maintain a proper rapport with his pupils, his administrators, and the parents in the system. His temperament and outbursts in class, in the superintendent's office and elsewhere covered a period from the 1968-1969 school year through the 1971-1972 school year. We would at once concede that an uncontrollable temper may be remediable. The record clearly establishes that the class of 1971 was a class of excep-

tional academic ability as well as an exceptional class of pure student devilment. It is somewhat specious, however, to attribute this teacher's conduct to that class alone. The conduct complained about antecedes their arrival in the high school and continued after their departure. In several specific instances, the administration solved the problem by advising some two or three students to drop the course in physics or chemistry, as the case may be. Some four or five students took either physics or chemistry during the summer months in other institutions rather than at their own local high school. One student after graduation and while in college wrote to the administration about the matter.

Recognition that temper outbursts are remediable does not however entitle them to remain remediable forever as a bar to the discharge of a teacher. In *Pearson v. Board of Education*, 12 Ill.App.2d 44, 138 N.E.2d 326, the teacher was charged with losing his temper and failing to cooperate with the administration, his fellow teachers and students. The incidents testified to before the Board in that case ran over a period of one year and the dismissal of the teacher was affirmed. In *Robinson v. Community Unit School District No. 7*, 35 Ill.App.2d 325, 182 N.E.2d 770, the court stated at page 330:

> "While the proof of the specific charges was weak in many instances and while the disagreements and dissensions between plaintiff and several of the other teachers was not shown by the evidence to have been solely Mr. Robinson's fault, nevertheless, it is clear that there was an atmosphere of unpleasantness between the plaintiff and a number of the members of the faculty, including the principal. It is apparent, too, that this feeling had been growing for a number of years and reached a point where it could reasonably be said to be no longer remedial in nature."

This record is replete with complaints made to the administration, from parents and students and from 12 or 15 incidents in which this plaintiff displayed an uncontrollable temper accompanied with emotional explosion. Testimony of members of his classes was that these outbursts would occur frequently for minor disturbances. They occurred in the office of the superintendent. They occurred with the principal. They occurred with a mother and her daughter in the hallway. It would unduly extend this opinion to recite all of the testimony. Objection is made to some of the recitals by the parents of the children as to what the children told them when they came home from school. In most instances, this hearsay testimony was corroborated by the students. In any event, it was clearly admissible to establish the fact of the complaint and the occasion for the parent's visit or calls to the administration. The teacher did not take the stand to deny any of the events testified to. In Febru-

ary, 1970, at the Board's direction to write a letter to the teacher, the superintendent advised him in writing that complaints had been made, that he lost control of his emotions and his temper on several occasions dealing with students and with parents, that he had become emotional and upset to the degree that students had complained that they had fear of him and the letter further informed him that it was necessary to make immediate adjustments in order to carry on his duties and responsibility in a properly controlled situation. He was invited to discuss any questions that he had with the principal, the superintendent and the Board of Education. Following this letter, there were numerous discussions between him and the administrative authorities. The bill of particulars furnished on request likewise repeated these complaints in a general way. The record in this case fully justifies the conclusion that there was evidence to support the findings of the Board.

We are not permitted to weigh the evidence or judge its probative value. We are restricted in our determination to examination of the record and to a determination of whether the decision of the Board finds support in the evidence or is manifestly against the weight of the evidence. (*Keyes v. Board of Education,* 20 Ill.App.2d 504, 156 N.E.2d 763.) In *Meridith v. Board of Education,* 7 Ill.App.2d 477, 130 N.E.2d 5, the court stated at page 486:

> "The best interest of the schools of the district is the guiding star of the board of education and for the courts to interfere with the exercise of the powers of the board in that respect is unwarranted assumption of authority and can only be justified in cases where the board has acted maliciously, capriciously and arbitrarily."

There is nothing in this record to indicate that the Board of Education or the administrators were activated or motivated by any such motives nor for any political, partisan or capricious reasons. *Betebenner v. Board of Education,* 336 Ill.App. 448, 84 N.E.2d 569.

■■ We have read in detail the evidence in this case. We have read the cases cited. No useful purpose can be served by detailing the evidence nor by differentiating the factual situations in the many cases cited. The teacher, board, pupil, parent rapport in any school system is a delicate, nebulous and sometimes almost indefinable necessity for a successful school administration. The record here demonstrates that this teacher during the period would appear to improve and then backslide into his previous habits. It is well established that the finding and conclusions of an administrative agency on questions of fact are prima facie true and correct and it is only when a decision is without substantial foundation or manifestly against the weight of the evidence that a reviewing court can properly set it aside. (Ill. Rev. Stat. 1971, ch. 110, par.

274; *Drezner v. Civil Service Com.*, 398 Ill. 219, 75 N.E.2d 303; *Meridith v. Board of Education*, 7 Ill.App.2d 477, 130 N.E.2d 5.) We fully recognize that the Teacher Tenure Law has as its benign purpose job security for worthy teachers and serves as a protective shield against dismissal for trivial, political, capricious or arbitrary causes. It was not intended to lock a teacher into a school system where efforts over a period of years by the administration to help the teacher in remedial causes fails. The record here clearly establishes either that the teacher would not or could not maintain a proper rapport with his administrators, students and parents. The record is clear that the science courses in this school were suffering not because of educational limitations of the teacher which the record shows to be abundantly adequate, but because of personal conduct which the teacher either would not or could not correct. We conclude from this record that the best interest of this school district warranted the dismissal. There is substantial evidence in the record to support the conclusion that his period of usefulness in this particular district had waned or perhaps completely evaporated—a condition that might well not be present elsewhere.

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.