DAVID W. GLOVER, Plaintiff-Appellee, *v.* BOARD OF EDUCATION OF MACON COMMUNITY UNIT DISTRICT No. 5, Defendant-Appellant.

(No. 12423;

Fourth District—September 5, 1974.

1054

CRAVEN, J., dissenting.

Glen A. Featherstun, of Armstrong, Winters, Prince, Tenney & Featherstun, of Decatur, for appellant.

Drach, Terrell & Deffenbaugh, P.C., of Springfield, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant Board of Education appeals from the judgment of the circuit court of Macon county reinstating plaintiff as a teacher in the Macon Community Unit School District No. 5.

In the fall of 1969 plaintiff commenced his employment as a school teacher for the defendant school district. At a board meeting on February 15, 1971, plaintiff's probationary period was unanimously extended for a third year. On March 29, 1972, the board voted to terminate plaintiff's employment. It was contended that plaintiff had, in general, failed to maintain proper discipline in his classes, that plaintiff did not conduct his class in a manner conducive to learning and that defendant used an arbitrary grading system. On April 4, 1972, a bill of particulars was given, at plaintiff's request, to these general charges. A hearing was held before the board on May 2, 4, 9, 10, 11 and 15, 1972.

At the hearing ten of plaintiff's former students testified that in plaintiff's classes, loud noise and disorder generally prevailed. Several students testified that vulgar and profane language was used in plaintiff's classroom which plaintiff did not seriously attempt to prevent. Several students testified to physical contact made by plaintiff with various students. Several students testified that plaintiff never specified his grading schedule. The superintendent of the school district testified that he often passed plaintiff's classroom and observed noise and disorder, that he

once observed plaintiff and a student engaged in an especially heated exchange, and that in his opinion plaintiff was incompetent and his problems were not correctable. He further testified that no notice was sent to plaintiff by certified mail of the extention of his probationary period in February of 1971, but he stated that plaintiff received actual notice because copies of that meeting were furnished to all teachers, and in April of 1971 plaintiff asked him why his probation had been extended at which point he related to plaintiff the various problems of discipline, lack of a proper learning atmosphere and lack of rapport with students. The principal of the high school testified that students in plaintiff's classes assumed control whenever they desired, that he frequently observed noise and turmoil in plaintiff's classes, that he had once observed plaintiff holding a student against the wall by his shirt collar, that he had once observed plaintiff and a student shouting at one another with plaintiff having lost control of his emotions, and that he had privately admonished plaintiff that the only proper physical punishment was paddling in the principal's office. He also testified at length concerning other observations and instances concerning plaintiff's disciplinary problem. He further stated that numerous students complained to him about plaintiff's arbitrary grading system, and that plaintiff at a meeting to discuss the problem was never able to satisfactorily explain the grade differentials. He also stated that in September of 1971 he approached plaintiff about his disciplinary problems and his lack of rapport with students and offered suggestions to help resolve them. He further stated that in November of 1971 he warned plaintiff that his problems were continuing, and that if there was not some improvement, he would recommend that plaintiff not be re-employed. It was further stated that on January 25, 1972, the superintendent and principal talked with plaintiff, told him they would recommend he not be re-employed for the following year, and asked him to resign. At this meeting plaintiff's problems concerning discipline, class atmosphere, and student communication were again discussed. Plaintiff did not testify at the hearing, but he did call six teachers who testified that grading standards are subjective and flexible, and two students who testified that vulgar language was used elsewhere in the school and that other teachers also physically abused students.

After the hearing the board affirmed its decision to terminate the plaintiff, specifically finding that the probationary period of the plaintiff was extended for an additional school term in February of 1971, that plaintiff had received actual notice thereof at least 60 days before the end of the school year, that plaintiff had not acquired tenure, that even if plaintiff had acquired tenure, all applicable statutory provisions concerning the

dismissal of a tenured teacher were complied with, that the evidence established plaintiff's lack of discipline or control and his unexplained grading system, and that plaintiff's deficiencies were irremedial.

On June 23, 1972, plaintiff filed a complaint in the circuit court of Macon county for administrative review. On February 1, 1973, the court reversed the school board's decision and reinstated plaintiff finding that plaintiff was tenured, that the charges against plaintiff were remedial, and that notice of those charges was required but not given.

■■ We agree with the trial court that plaintiff was tenured. Section 24—11 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—11) states "Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service [tenure] * * *. If, however, a teacher has not had one school term of full-time teaching experience before the beginning of such probationary period, the employing board may at its option extend such probationary period for one additional school term by giving the teacher written notice by registered mail at least 60 days before the end of the second school term of the period of 2 consecutive school terms referred to above. Such notice must state the reasons for the one year extension and must outline the corrective actions which the teacher should take to saaisfactorily complete probation." In the instant case the school board on February 15, 1971, of plaintiff's second consecutive school year, extended plaintiff's probationary period for a third year. The school board concedes that it did not notify plaintiff of the extension by registered mail as required by statute. However, it is also conceded that plaintiff acquired actual notice of the school board's actions by reading the school board minutes supplied all the teachers. Hence, the school board contends that the statutory requirement of formal notice is satisfied when actual notice is established and cites *Reynolds v. City of Tuscola*, 48 Ill.2d 339, 270 N.E.2d 415, in support thereof. In *Reynolds* the plaintiff served notice on the defendant city by registered mail with return receipt requested when the Local Government Tort Immunity Act required personal service. The supreme court found that the notice there was proper because a more restrictive interpretation of the statute could lead to absurd and unjust consequences. In that case plaintiff made a good-faith attempt to convey notice in a manner which was as good as, if not better than, the statutorily required method, and actual notice was, in fact, received. In the instant case, however, the defendant school board made absolutely no attempt to convey notice to plaintiff by any means whatsoever. The mere fact that plaintiff received actual notice by fortuitously reading the minutes of the board meeting sent to all teachers is not by any stretch of the

imagination a method of conveying notice which is equivalent to that required by statute within the purview of *Reynolds,* and such a blatant disregard of the statute is not to be condoned. Therefore, by serving two consecutive school terms without receiving the statutorily required notice of an extension of his probation, plaintiff became tenured at the beginning of his third school year.

■■■ If the charges are remedial, a tenured teacher may only be dismissed when written notice of the specific charges are served on the teacher 60 days before the end of the school year. (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.) In the instant case the trial court reversed the finding of the school board and found that the charges against plaintiff were remedial and required written notice. We disagree. A cause is irremedial when irreparable damage has already been done and cannot be remedied. (*Jepsen v. Board of Education,* 19 Ill.App.2d 204, 153 N.E.2d 417.) The charges here are essentially of a remedial nature, if considered alone and to the exclusion of other pertinent facts, especially those relating to the maintainance of discipline and order. (*Smith v. Board of Education,* 19 Ill.App.2d 224, 153 N.E.2d 377.) Nevertheless, it has been stated that where defects which are remedial in nature continue for a long enough period of time and where the teacher refuses or fails to remedy them, they may be considered to be irremedial. (*McLain v. Board of Education,* 36 Ill.App.2d 143, 183 N.E.2d 7; *Robinson v. Community Unit School District No. 7,* 35 Ill.App.2d 325, 182 N.E.2d 770.) Such is the case here. More than one year before dismissal in February of 1971, plaintiff's probationary period was extended because of an awareness of plaintiff's difficulties and shortly thereafter in April of 1971, plaintiff, upon request, was informed by the superintendent of the school district that the school was concerned about plaintiff's discipline problems, his failure to maintain a proper learning atmosphere and his lack of rapport with students. In September of 1971 the principal approached plaintiff about his disciplinary problems and his lack of rapport with his students and offered suggestions to help resolve them. In November of 1971 the principal warned plaintiff that his problems were continuing and that if there was not some improvement, he would recommend that plaintiff not be re-employed. On January 25, 1972; the superintendent and the principal talked with plaintiff, discussed his problems regarding discipline, class atmosphere and student communication, and told him they would recommend he not be re-employed the following year. Other instances of reprimands and encounters throughout the winter of 1971 and the early part of 1972 concerning arbitrary grading and physical abuse indicates that both plaintiff and the school administrators were clearly aware, for a lengthy period of time before final action was taken, of plaintiff's

deficiencies and that he might not be re-employed. Whether or not causes for dismissal of a teacher are irremedial is a question of fact whose initial determination lies within the discretion of the school board. (*Wells v. Board of Education*, 85 Ill.App.2d 312, 230 N.E.2d 6.) Therefore, on the basis of the record before us, the school board's finding that plaintiff's deficiencies were irremedial was clearly not against the manifest weight of the evidence, and written notice of such defects was not required before action could be initiated to dismiss plaintiff.

■■ A school board may dismiss a tenured teacher for "* * * incompetency, cruelty, negligence, immorality or other sufficient cause and * * * whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it * * *." (Ill. Rev. Stat. 1973, ch. 122, sec. 10—22.4.) A court of review will not interfere with the school board's decision regarding dismissal unless the board acts in an arbitrary or capricious manner or the reasons formulated for such a dismissal are against the manifest weight of the evidence. (*Lombardo v. Board of Education*, 100 Ill.App.2d 108, 241 N.E.2d 495.) In the instant case ten of plaintiff's former students testified to the constant loud noise and general disorder in plaintiff's classrooms, to physical abuse by the plaintiff of various students, and to arbitrary grading policies. In addition, the principal and superintendent testified to hearing and observing disorder and loud noises in plaintiff's classroom over a long period of time. Furthermore, the principal testified to specific instances of the use by plaintiff of physical force to subdue students and to the failure of plaintiff to satisfactorily explain his grading policies. Plaintiff, however, failed to introduce any evidence controverting the disorder and lack of discipline in his classroom or his own excessive use of force but merely called various teachers who testified that grading standards are subjective and flexible, and various students who stated that other teachers physically abuse students and that vulgar language is used elsewhere in the school. The school board's dismissal of plaintiff is then clearly not against the manifest weight of the evidence.

Accordingly, for the reasons given above, the judgment of the circuit court of Macon County reinstating plaintiff as a teacher in defendant school district is hereby reversed.

Judgment reversed.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN dissenting:

The majority opinion of their holding reverses the circuit court of Macon County and affirms the action of the Board of Education. In so

doing, the majority necessarily approves of a procedure that is devoid of even rudimentary due process.

In this case, a teacher was fired from his position by the school board. The teacher sought and obtained administrative review and the trial court held that there had not been adequate notice; that the teacher had acquired tenure status; and that the charges against the teacher were remedial and that the school board's finding that the deficiencies were irremedial were against the manifest weight of the evidence. The trial court not only reinstated the teacher but he ordered costs and attorney fees. The majority of this court disagrees and reverses based upon a record that was produced by a hearing and based upon a procedure that in my opinion is devoid of the required due process procedure.

It is fundamental that a teacher, tenured or untenured, cannot be discharged without a predischarge hearing that complies with due process. (See *Board of Regents v. Roth*, 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701; *Perry v. Sindermann*, 408 U.S. 593, 33 L.Ed.2d 570, 92 S.Ct. 2694.) A hearing required under *Roth* or *Sindermann* must of course be a fair hearing "and, of course an impartial decision maker is essential." *Goldberg v. Kelly*, 397 U.S. 254, 271, 25 L.E.2d 287, 301, 90 S.Ct. 1011.

In this case, the Board of Education extended the plaintiff's probationary period for certain reasons, ultimately determined to fire him, he learned of the charges through the principal, subsequently received a bill of particulars, and then a hearing was conducted before the Board of Education sitting in judgment upon its own charges. This procedure, outlined by statute, compels the teacher to submit his controversy to a tribunal of which his antagonists are members and the antagonists pass ultimate judgment upon his conduct. Such does not afford due process of law nor any semblance of due process. In *Eidenmiller v. Board of Education*, 28 Ill.App.2d 90, 170 N.E.2d 792, an abstract opinion, Mr. Justice Smith, in a concurring opinion stated:

> "The Teacher Tenure Law was designed to cure then existing evils in our school system by providing a speedy, simple procedure for the dismissal of teachers based on charges, notice, a fair hearing and a speedy judicial review under the provisions of the Administrative Review Act. These benign purposes become obscure in this record. In *Lusk v. Community Consolidated School District*, 20 Ill.App.2d 252, we had occasion to say that a teacher is not entitled to a hearing, she is entitled to a *fair* hearing, that administrative agency does not represent one party against the other, *I Illinois Law and Practice*, page 461, and 'our study of the record raises a grave doubt that the hearing afforded in this case

was the type of hearing which the legislature had in mind when it enacted the Teacher Tenure Law'. What we then said of that record we now say of this. * * *

Other States have been confronted with the unique problem here confronting us. 'The anomaly in procedure which permits the board of education to serve in the triple capacity of complainant, prosecutor and judge makes it vitally necessary that in reviewing administrative decisions courts zealously examine the record with a view to protecting the fundamental rights of the parties.' *State ex rel. Steele v. Board of Education*, 252 Ala. 254. In discussing dual functions similar to those here, Judge William J. Brennen, Jr. (now Justice of the United States Supreme Court) had this to say: 'The substantiality of evidence must take into consideration whatever in the record fairly detracts from its weight', *In re Larsen*, 17 N.J. Super. 564, and held that the implications arising from the *merger of functions* could be so considered. In the case before us now, we deal not with a dual role, not with a triple role, but with the quadruple roles of complainant, prosecutor, judge and witness in a single tribunal. Our Supreme Court once said of a similar statute that, 'a statute which compels a (sic) litigant to submit his controversy to a tribunal of which his antagonist (sic) is a member makes his antagonist his judge and does not afford due process of law'. *Commissioners of Drainage Dist. No. 1 v. Smith*, [233] Ill. 417."

In *Miller v. Board of Education*, 51 Ill.App.2d 20, 41-42, 200 N.E.2d 838, the court specifically noted the concurring opinion in *Eidenmiller* and stated:

"We are in accord with what is said in that opinion and conclude that the plaintiff in the instant case was prevented from having a fair trial by the multiple capacities in which the School Board and its attorney were functioning. We also conclude that the charges which were proved against the plaintiff were remediable and would therefore have required a warning notice. The judgment of the Circuit Court is affirmed."

In *Pickering v. Board of Education*, 36 Ill.2d 568, 225 N.E.2d 1, Mr. Justice Schaefer in a dissenting opinion, concurred in by the then Chief Justice, criticized the fact that charges were formulated by the very members of the Board who then would determine the validity of the charges. In his dissent, Justice Schaefer said: "The unseemliness, if not the unconstitutionality, of this procedure reinforces my doubt that the General Assembly intended that it should apply to the exercise of first-amendment rights." (36 Ill.2d at 580.) The Illinois Supreme Court

affirmed the dismissal of the plaintiff in *Pickering*; the United States Supreme Court reversed that discharge upon first-amendment grounds and did not comment upon the due process issue. (See *Pickering v. Board of Education*, 391 U.S. 563, 20 L.Ed.2d 811, 88 S.Ct. 1731.) In 2 Davis, Administrative Law Treatise, at 182 (1958 ed.), there is some some discussion as to the necessary flexibility of due process requirements in the light of what is referred to as a rule of necessity. The so-called rule of necessity cannot be used to effect a total denial of due process rights. Indeed, in his dissenting opinion in *Pickering*, Justice Schaefer negated the existence of a rule of necessity in our statutory scheme, saying:

> "A legislative system which, as in this case, casts them in the role of aggrieved victims who formulate, prosecute and punish charges based on their grievances is not, in my opinion, compatible with present standards of due process. Nor is such a procedure necessary, for charges of this sort could readily be heard and determined by the County Board of School Trustees, the County Superintendent of Schools, or the Superintendent of Public Instruction. The problem is particularly acute when the sanction of discharge is involved, for then the board must determine whether the condition that gives rise to the discharge is remediable. In a discharge case the board has already determined that the condition cannot be remedied, and it is hard to see how members of the board can be expected to review that determination impartially when the conduct upon which the discharge is based involved their personal grievances." (36 Ill.2d at 585.)

Present standards of due process prohibit the combination of functions found in this record. Upon judicial review limited by statute to that record, without a de novo proceeding, this court reverses the trial court, finds a valid basis for discharge and that the grievances against the teacher were not remedial. In so doing, they stamp the statutory procedure as judicially approved. I would stamp it as offensive to due process.