FRANK MORRIS, Plaintiff-Appellant, *v.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (1st Division)    No. 79-2263

Opinion filed May 18, 1981.

De Long, Poltrock & Giampietro, of Chicago (Lawrence A. Poltrock and Michael Radzilowsky, of counsel), for appellant.

Michael J. Murray, of Chicago (Christine Cheatom, of counsel), for appellee.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Frank Morris, a tenured physical education teacher assigned to Roosevelt High School, was dismissed from his position by the Chicago Board of Education (hereinafter Board). On administrative review (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), the Board was affirmed. Plaintiff appeals contending that the Board did not have jurisdiction to dismiss him because it failed to provide him with written warning that failure to remove certain specified remediable charges would result in his dismissal and that in the alternative the charges were not proven by the manifest weight of the evidence.

We reverse.

On May 3, 1978, the then general superintendent of schools, Joseph P. Hannon, filed charges against the plaintiff with the Board which asserted that he was repeatedly tardy for class and other appointed duties; failed to maintain discipline; failed to offer any instruction in some of his physical education classes, failed to present lesson plans, and at best, had a disorganized and unplanned teaching method; failed to amend his teaching method despite instructions and directions to the contrary; failed to procure equipment or teaching materials prior to class; ridiculed some students and ignored others who were awkward, timid or obese; failed to present a water safety certificate; disobeyed school policy by submitting late student records and by removing certain student records from the school building; was the object of parental complaints; failed to heed the warnings of April 20, 1977, and October 13, 1977, of deficiencies in his work, which if not remedied, would result in his discharge; and that the deficiencies in his teaching performance were irremediable.

A trial committee was formed and after a number of continuances, a hearing was held on August 30, 1978. The Board's case against plaintiff was based upon the testimony of Roosevelt High School principal, Ursula Blitzner, and District Superintendent, Shirley Stack. The plaintiff testified in his own behalf and also introduced the testimony of Jessie Turner, the chairman of the Roosevelt High School Physical Education Department.

In Principal Blitzner's evidentiary deposition, which was admitted into evidence, she testified that she observed the plaintiff's classes on seven occasions from March 3, 1977, to September 21, 1977. On March 3, 1977, she visited the plaintiff's swimming class and found that some of his students were not swimming "warm-ups" but instead stayed in the shallow end of the pool. Moreover, the plaintiff offered no instruction, merely announcing that the class should practice the breast stroke, and was not properly dressed for class. An examination of plaintiff's lesson

plan for that day's class revealed the notation "breast stroke" without further explanation. In a subsequent conference the principal informed plaintiff of her observations and made suggestions for his improvement, including the reading of written materials on how to teach swimming. Plaintiff, according to the principal, indicated that he would look at some of these materials. A letter embodying the substance of this conference was sent to the plaintiff.

The principal again observed plaintiff's class on April 18, 1977, at which time she observed 24 boys playing volleyball while the plaintiff, attired in street clothes, watched without giving any instructions, demonstrations or corrections. She also observed eight boys playing in the gym who were not a part of plaintiff's class. When she questioned plaintiff as to why the boys were there, the plaintiff turned to the boys and said, "leave." The principal and the plaintiff then examined the class membership book to see how many students were actually enrolled in plaintiff's class. While 48 students were listed as enrolled in his class, plaintiff had not checked on the 24 missing students yet. He informed the principal that he was not responsible for his students' attendance because that was their parents' responsibility. At this time the principal reviewed with the plaintiff the standard procedures for following up on absences. Plaintiff again had no lesson plan. At the conference held after this class visit the principal again offered suggestions for improvement, particularly noting the difference between supervising on a recreational basis and teaching. She also stressed the necessity for plaintiff to wear proper teaching attire to his physical education classes.

On April 20, 1977, an E-1 notice was filed pertaining to plaintiff which indicated that his efficiency had lowered and was now unsatisfactory. This rating was based on some of the same charges ultimately filed by the General Superintendent of Schools against the plaintiff. The notice included specific suggestions for improvement and informed plaintiff that the principal would make a class visit during the week of May 2, 1977, to evaluate his improvement. In the interim between April 20, 1977, when the E-1 notice was given and September 27, 1977, when the E-2 notice was given, the principal made five visits to plaintiff's classes. According to her testimony these visits disclosed that the plaintiff failed to improve either his teaching performance or the administration of his nonteaching duties. From these visits she noted that: no lesson plans were prepared; no instruction given in swimming classes; the plaintiff absented himself from his class on occasion; failed to produce a current water safety instructor certificate; allowed horseplay in his classes; and ridiculed an obese student by calling him "skinny." The plaintiff also failed to prepare for class as illustrated by an instance where he left his health class unattended so that he could search for another teacher in the

physical education department who had a key to a bookcase where the health class books were kept because he had misplaced his own key. The principal explained that each of the aforementioned visits was followed by a conference stressing the importance of detailed lesson plans, not leaving students unattended, and the potential use of open periods to obtain and prepare materials for class. In the course of these conferences the principal loaned plaintiff books and teaching materials and also instructed him on certain specific techniques as she had been a physical education instructor for 16 years prior to becoming a principal.

The principal also testified that the plaintiff failed to perform his nonteaching duties. This testimony included events occurring in October and November of 1977, and January and February of 1978. She noted that he was habitually tardy having been tardy 41 times during the period from February 8, 1977 to March 6, 1978, and that he had been absent a total of 26½ days during this same period. A valid excuse was acknowledged for each absence. Plaintiff was also late in submitting student records along with several other teachers. The principal testified that the plaintiff removed student records from the school building after she specifically told him not to remove them. He also absented himself from the school premises on one occasion after signing in and did not return till noon. The plaintiff informed the principal that he had gone to court and that the other members of the physical education department were to have taken care of his classes for him. Two parental complaints were also reported.

On September 27, 1977, an E-2 notice was filed which again noted plaintiff's teaching performance as unsatisfactory and that no improvement had been shown subsequent to the E-1 notice. The notice included documentation of visits made by the principal and the district superintendent and stated the district superintendent's recommendation that plaintiff be terminated. A hearing on the E-2 notice was held on October 13, 1977, with the principal, district superintendent, plaintiff, and a representative from the union and the Bureau of Teaching personnel department present. In this conference the plaintiff noted that he did not believe in lesson plans and that he disputed some of the principal's opinions.

The principal testified in her evidentiary deposition that the plaintiff failed to improve his performance after the issuance of his E-2 notice and noted that his teaching "continued to worsen." She stated that her opinion was based on her visits and conferences with the plaintiff. It was also her opinion that plaintiff was a poor physical education teacher and that his problems were not remediable because he did not accept suggestions and did not follow through on instructions.

Dr. Shirley Stack, the district superintendent of Roosevelt High also

testified as to plaintiff's teaching performance. She visited plaintiff's classes three times on June 2, 1977, and noted that she planned her visits to determine if plaintiff had implemented any of his principal's suggestions. She stated that plaintiff gave no instruction in either his swimming or volleyball class, allowed students to engage in horseplay, and that he hadn't implemented the "warm-up" method suggested by the principal. He told her that he hadn't changed his "warm-up" method because it was not sufficient for his students. Dr. Stack also observed that plaintiff left the students in a swimming class unattended in the pool area and that during his absence one student threw the pool's rescue hook javelin-style into the pool near where a number of students were playing. Dr. Stack stated that she discussed with the plaintiff the need for improving his teaching techniques, meeting the individual needs of the students, his lack of discipline, and his failure to follow the principal's directives and suggestions. The plaintiff informed Dr. Stack that some of the principal's suggestions were "outmoded." In Dr. Stack's opinion the plaintiff's performance was unsatisfactory and the causes not remediable. She reached the latter conclusion based on the fact that while plaintiff had been given advice and suggestions as to how he could improve his instruction, he put none of the suggestions into practice.

The plaintiff testified in his own behalf that he had worked for the Chicago school system for over 12 years, had a bachelor's degree in physical education, and was currently working on a master's degree in administration and supervision. He stated that he was assigned to Roosevelt High School in September 1976, and continued that assignment until he took a leave of absence on March 6, 1978. While at Roosevelt he taught classes in sex education, volleyball, basketball, tumbling, swimming and rhythm and dance. The plaintiff stated that he was often tardy while he was at Roosevelt because his wife had tuberculosis and that he often had to assist her in the morning with their four minor children. He further stated that he attempted to incorporate the principal's suggestions on his teaching techniques and that he followed her suggestions to review written materials on swimming. Moreover, he altered his technique for "warm-ups" and for how many steps should be taken on an approach to the diving board prior to a dive. He testified that he did utilize lesson plans which he prepared a week in advance. He also testified that prior to the conference concerning his E-2 notice he informed his principal that he would do anything necessary to improve his performance. He also explained that on the day the district superintendent visited his classes he was taking medication for the flu and as a result of his physical condition had to absent himself from his class to go to the washroom. He instructed his class to sit in the bleachers during his absence but found upon his return that this instruction had not been followed. He disciplined the

student who threw the rescue hook and called his parents regarding the incident. Plaintiff testified that he made it a regular practice to follow up on his absent students. He would check with a student's homeroom teacher, fill out a cut slip and call the student's parents.

As to the complaints made in regard to his swimming class, plaintiff testified that he divided his swimming class into groups based on the student's ability. He noted that some students could not swim at all. He would then alternate working with the groups so that he could give them equivalent amounts of instruction. Sometimes he would work with one group for a few days and then another for the next few days.

Jessie Turner, chairman of the physical education department at Roosevelt High School, testified for the plaintiff that on two occasions he shared the gym with plaintiff's class and that on both occasions plaintiff was in control of his class and nothing out of the ordinary occurred. He admitted, however, that he did not actually observe plaintiff's class as he was preoccupied with his own class.

Following the hearing the trial committee recommended discharge finding that the charges were properly filed, there was proper notice of hearing and service of charges stating the case for dismissal and the plaintiff failed to discharge his duties. The committee found that the charges were irremediable. The Board confirmed the committee's recommendations on August 3, 1978. The plaintiff subsequently filed a complaint for administrative review. The trial court affirmed the decision of the Board. On a motion to reconsider, plaintiff argued that the charges were remediable and that the notice given was not proper under the recently decided decision in *Litin v. Board of Education* (1979), 72 Ill. App. 3d 889, 391 N.E.2d 62. The court determined that the notice supplied plaintiff was defective as statutory notice but as the charges were irremediable affirmed the discharge. The plaintiff appeals from the original judgment of the trial court and the order denying the motion to reconsider.

The plaintiff alleges that the Board had no jurisdiction to dismiss him because it failed to provide him with the required statutory warning of the causes, which if not remedied, would result in his dismissal. (Ill. Rev. Stat. 1977, ch. 122, par. 34-85.) The Board admits that, under the holding of *Litin v. Board of Education*, the E-1 and E-2 notices given the plaintiff in the instant case did not constitute sufficient statutory notice, but contends that no such warning was required because the charges against the plaintiff were irremediable.

In order to assure teachers of experience and ability of continuous service and rehiring based upon merit rather than upon reasons that are political, partisan or capricious so that they will be encouraged to work within the Illinois educational system, the School Code provides that a

tenured teacher may only be discharged for cause. (Ill. Rev. Stat. 1977, ch. 122, pars. 34-85; see *Donahoo v. Board of Education* (1952), 413 Ill. 422, 109 N.E.2d 787; *Jones v. Hannon* (1978), 58 Ill. App. 3d 504, 374 N.E.2d 834.) In furtherance of the goal of protecting tenured teachers, the School Code also provides in pertinent part:

"Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher or principal shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges."

■■ The question which we must reach in evaluating the Board's jurisdiction in this matter is whether the causes named in the charges were remediable or irremediable in nature. Whether causes for dismissal are remediable is a question of fact and its initial determination lies within the discretion of the Board; hence, a reviewing court will not interfere with the Board's decision unless the Board has acted in an arbitrary or capricious manner or the reasons formulated for such a dismissal were against the manifest weight of the evidence. *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322; *Lowe v. Board of Education* (1979), 76 Ill. App. 3d 348, 395 N.E.2d 59; *Glover v. Board of Education* (1974), 21 Ill. App. 3d 1053, 316 N.E.2d 534; *Wells v. Board of Education* (1967), 85 Ill. App. 2d 312, 230 N.E.2d 6.

■■ A cause is irremediable when irreparable damage has already been done and cannot be remedied. (*E.g., Jepsen v. Board of Education* (1958), 19 Ill. App. 2d 204, 153 N.E.2d 417.) As the court explained in *Gilliland,*

"The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned her." (67 Ill. 2d 143, 153.)

Causes, remediable when considered alone, will be deemed irremediable where combined with other remediable causes if continued over a long period of time during which the teacher refuses or fails to remedy them. (*E.g., Gilliland v. Board of Education; McCutcheon v. Board of Education* (1981), 94 Ill. App. 3d 993, 419 N.E.2d 451; *Glover v. Board of Education* (1974), 21 Ill. App. 3d 1053, 316 N.E.2d 534; *Kallas v. Board of Education* (1973), 15 Ill. App. 3d 450, 304 N.E.2d 527; *McLain v. Board of Education* (1962), 36 Ill. App. 2d 143, 183 N.E.2d 7.) Accordingly, where no statutory warning has been given the evidence presented at the hearing on the charges must not only prove that the causes for discharge existed, but it must also be shown by competent substantial evidence that the causes were not remediable. *Werner v. Community Unit School District*

*No. 4* (1963), 40 Ill. App. 2d 491, 190 N.E.2d 184; *Hauswald v. Board of Education* (1958), 20 Ill. App. 2d 49, 155 N.E.2d 319.

■■ The parties each make reference to a number of Illinois decisions which they argue are analogous to the present case. We have reviewed these decisions and believe that *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398, represents the case most factually analogous to the instant case. In *Grissom* the plaintiff, a tenured teacher, was discharged based on charges that he failed to maintain discipline, provided inadequate classroom instruction and failed to act upon the suggestions of his principal and superintendent. The court concluded that while these charges were serious they were remediable in nature because,

> "[T]he board has failed to demonstrate that the damage to the students, faculty or school has been of such a severe nature as to justify not giving the required warning (citation); and it has failed to show that the conduct resulting in that damage could not have been corrected even if the warning had been given." (75 Ill. 2d 314, 332.)

The evidence in *Grissom* revealed that the plaintiff was receptive to his superior's instructions and suggestions and that he attempted to implement them as acknowledged by his superiors. The court concluded that the Board's determination that the charges were irremediable was against the manifest weight of the evidence. The court distinguished the facts in *Grissom* from those in *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322, on the basis that in *Gilliland* the plaintiff had a much longer time period in which to remedy her problems and noted that, "the damage there compounded into irremediability over the years." (75 Ill. 2d 314, 333.) In *Grissom*, in comparison, the court noted that the plaintiff's problems began after the start of the academic school year and that he was notified of his dismissal within six months of the beginning of the school year.

Here the charges span a period from February 8, 1977, to October 13, 1977, which due to summer recess amounts to approximately five months. Notably, all of the evidence relating to plaintiff's instructional problems refers to incidents occurring within this time period. Moreover, the evidence in the record generally is restricted to this time period, except for certain instances where the plaintiff failed to perform administrative duties and his absences, which are calculated through March 1978.

We believe that the causes charged against the plaintiff were remediable in nature because the Board failed to establish either that the plaintiff's causes severely damaged the students, faculty or school or persisted for a sufficient time period so that they could not have been corrected if a warning had been given. Here, as in *Grissom*, the plaintiff's superiors held numerous conferences with him to provide him with

concrete suggestions for his improvement and plaintiff's testimony as well as that of his principal reveal the plaintiff's general willingness to make changes. Plaintiff's superiors denied that he made any improvement during the five-month period and testified that the causes were irremediable because plaintiff did not implement their suggestions. However, we note that there is no evidence that any class visits or conferences were held after October 13, 1977, to determine plaintiff's progress, if any, although the Board did not file charges until May 3, 1978. We think that under the facts and circumstances of this case five months was an insufficient period in which to determine that plaintiff's causes were irremediable. (Compare *People v. Grissom* with *McCutcheon v. Board of Education* (1981), 94 Ill. App. 3d 993, 419 N.E.2d 451, and *People v. Glover* (1974), 21 Ill. App. 3d 1053, 316 N.E.2d 534.) Accordingly, we find that there is no evidence that plaintiff could not have corrected his teaching program and also improved in other areas had he been warned by the Board of the serious consequences his failure to remedy could have. Nor is there any reason to infer that plaintiff couldn't have improved if demanded in writing by the Board to give these details more attention. As such, the failure of the Board to provide a statutory warning to plaintiff deprived it of jurisdiction to discharge him. *People v. Grissom; People v. Aulwurm* (1977), 67 Ill. 2d 434, 367 N.E.2d 1337.

For the reasons given the judgment of the circuit court of Cook County is reversed.

Reversed.

McGLOON and O'CONNOR, JJ., concur.