(No. 50409.—

RICHARD GRISSOM, Appellant, v. THE BOARD OF EDUCATION OF BUCKLEY-LODA COMMUNITY SCHOOL DISTRICT NO. 8 *et al.,* Appellees.

*Opinion filed April 3, 1979.*

316

318

UNDERWOOD, J., dissenting.

Allen & Korkowski & Associates, of Rantoul, for appellant.

David K. Henriksen, of Thomas, Mamer, Haughey & Miller, of Champaign, for appellees.

MR. JUSTICE CLARK delivered the opinion of the court:

The board of education of Buckley-Loda Community School District No. 8, defendant, dismissed the plaintiff, Richard Grissom, a tenured teacher, at the end of the 1973-74 school year. At a meeting of the board on March 25, 1974, it had voted not to rehire Grissom, and had sent him a notice of dismissal the following day. Grissom, within the statutorily required 10 days (Ill. Rev. Stat. 1973, ch. 122, par. 24—12), requested a hearing and a bill of particulars, and stated that the apparent causes for his discharge were remediable, thus entitling him to a warning which had not, the board agrees, been given. The board sent a bill of particulars, which Grissom maintains was inadequate, and set a date for the hearing, which started

May 7, 1974, and continued on subsequent dates through the summer of 1974. Following the hearing, the board made findings and voted to dismiss the plaintiff, who filed for administrative review in the circuit court of Ford County (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*). The circuit court affirmed, as did the appellate court (55 Ill. App. 3d 667), and we granted leave to appeal (65 Ill. 2d R. 315).

The plaintiff has raised several issues in addition to the apparent issue of whether the dismissal was contrary to the manifest weight of the evidence. He first asserts he was denied a fair and impartial hearing because the board members were not impartial but antagonistic towards him, and because the board's attorney acted as both prosecutor before and advisor to the board. This argument is a variation of the due process challenge presented in *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143.

The present dismissal procedure (Ill. Rev. Stat. 1977, ch. 122, par. 24—12) provides for the appointment of an independent hearing officer in teacher dismissal disputes. The procedure in effect at the time of the instant case did not (Ill. Rev. Stat. 1973, ch. 122, par. 24—12). Instead section 24—12, as effective then, gave a local board of education the responsibility for initiating and finalizing teacher dismissals, for cause, and the competence to act as a hearing tribunal if the "charged" teacher wanted a hearing. The role of the board's attorney as both advisor to the board—for example, on questions of evidence and objections—and allegedly as "prosecutor" is irrelevant. The question is whether the board fulfilled its proper function as established by the legislature. The board's function has been to hire teachers, assign them, and remove them if necessary. This requires the board to establish charges against teachers it finds incapable or wanting, and, as the statute was in effect then, to hold hearings. The record here indicates that the statutory procedure (Ill. Rev. Stat.

1973, ch. 122, par. 24—12) was adhered to. The plaintiff's argument, then, is a constitutional challenge already settled by this court in *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 154-56. We also note, as did the *Gilliland* decision, that a similar procedure has survived constitutional challenge in *Hortonville Joint School District No. 1 v. Hortonville Education Association* (1976), 426 U.S. 482, 49 L. Ed. 2d 1, 96 S. Ct. 2308. Accord, *Withrow v. Larkin* (1975), 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456 (where the Supreme Court stated that the combination of investigative and adjudicative functions in a State licensing agency does not in itself have an unacceptable risk of bias). *Cf. Miller v. Board of Education* (1964), 51 Ill. App. 2d 20, 38-41.

Does this mean, then, that despite the existence of bias on the part of a decision maker, *e.g.*, here a board member, a petitioner in such a proceeding has no other recourse once a procedure is found constitutionally sufficient? Not at all. *Withrow v. Larkin* (1975), 421 U.S. 35, 58, 43 L. Ed. 2d 712, 730, 95 S. Ct. 1456, 1470, pointed out that special facts, demonstrating denial of due process, might exist. But without "a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' " (*Withrow v. Larkin* (1975), 421 U.S. 35, 55, 43 L. Ed. 2d 712, 728, 95 S. Ct. 1456, 1468.) Moreover, "[m]ere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. [Citations.] Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy on the basis of its own circumstances.' " (*Hortonville Joint School District No. 1 v. Hortonville Education Association* (1976), 426 U.S. 482,

493, 49 L. Ed. 2d 1, 9, 96 S. Ct. 2308, 2314. Accord, *Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33.) The plaintiff believes overwhelming bias existed on the part of the board. As evidence of this, he cites some instances. The plaintiff had been honorably let go in 1971 because the agriculture program, for which he had been hired, had been discontinued. He successfully sued to be reinstated. In the spring of 1974, the board chairman, James Flanigan, was approached with the question, "What's this you trying [*sic*] to get rid of Mr. Grissom again?" To which he admitted he replied, "What do you mean again? We never have stopped." The plaintiff also noted the following instances: the board sustained all nine of its attorney's objections while denying or overruling 19 of plaintiff's 24 motions or objections; one of the board members had reason to be biased because his son had been disciplined by the plaintiff; and Flanigan, in the presence of another board member, expressed the view to a prospective witness (whose testimony was recorded and allowed in on plaintiff's behalf) that the plaintiff was unreasonable and incompetent as a teacher.

The examples the plaintiff calls to our attention are not persuasive. Flanigan's remarks were thoughtless and indiscreet, but hardly so substantial as to evidence a vendetta or prejudice violative of the standards of *Withrow v. Larkin* (1975), 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456, *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, *Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, *Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33, and *Morelli v. Board of Education* (1976), 42 Ill. App. 3d 722. Moreover, they are the only evidence of hostility on the part of the seven-member board. The plaintiff has failed to show that any other member was biased; he must show more than the mere possibility of bias. We are unable to say the board, in the exercise of its duties, displayed unfairness to the plaintiff by favorably

acting on only six of his motions or objections. Plaintiff was accompanied by counsel, had the opportunity to cross-examine, and was permitted to offer as evidence tape recordings of testimony taken by his attorney without the presence of the board's attorney.

The plaintiff next asserts that the charges in the notice of dismissal and bill of particulars were insufficiently specific. The charges listed in the notice of dismissal (March 26, 1974) were:

"1. Inability or failure to discipline students, or maintain classroom discipline, in a proper or appropriate manner.

2. Failure to maintain and protect school property and equipment, under your charge or supervision, from defacement, damage or destruction.

3. Inability or unwillingness to convey proper classroom instruction to students so as to promote their comprehension and retention of the subject matter being taught; and, inability or unwillingness to utilize proper or appropriate instruction or teaching techniques.

4. Failure or refusal to accept and act upon suggestions, advice and directions provided to you by the Superintendent and Principal of the school, particularly in regard to those matters noted in the preceding sub-paragraphs."

The bill of particulars (April 9, 1974) expanded upon the charges above by repeating them but with additional, specific subparagraphs underneath each charge:

"I ***

a. Use of unnecessary and unwarranted physical force and violence in dealing with or disciplining students.

b. Failure to observe or correct unruly or undisciplined, and often physically unruly, conduct of students under your supervision during classes or otherwise.

II ***

a. Failure to protect desks, walls and other portions of classrooms and classroom equipment from defacement, damage or disarrangement (such as

carving of initials on desks, writing with ink on blackboards, removal of screws from desks and other classroom equipment, etc.) by students or others.

b. Failure to prevent or observe loss or theft of books, parts of projection equipment, and other equipment, from classrooms, by students or others.

c. Permitting students to place and leave trash and debris, such as candy wrappers, "spitwads", "wads" of gum, etc. in classrooms utilized by you.

III ***

a. Failure to answer questions of students, or explain subject matter to students upon request, during instruction, and particularly failure to do so in a clear, concise and professional manner.

b. Use of excessive volume of voice (even to the point of shouting), or unpleasant tones of voice, when attempting to instruct students.

c. Failure to exhibit, demonstrate and provide patience in instruction to students so as to impair their processes of mentation, and discourage or reduce their desire to learn.

IV ***

a. Refusing to accept proper direct orders or requests to teach classes.

b. Refusing or failing to accept and act upon proper suggestions, advice or orders relating to means of disciplining students.

c. Failure to remedy defects or deficiencies in teaching techniques, demeanor or disciplinary techniques although requested to do so orally and in writing by the Principal and Superintendent."

The plaintiff argues that they were insufficient for failure to specify incidents, dates and names. We disagree. "The charges in administrative proceedings need not be drawn with the same precision required of pleadings in judicial actions but need only be sufficiently clear and specific to allow the preparation of a defense." (*Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33, 37.) The essence of sufficient specifications, in other words, is that "it must fairly apprise the teacher of the alleged deficiency *** to enable the teacher to refute the charge." (*Wade v. Granite*

*City Community Unit School District, No. 9* (1966), 71
Ill. App. 2d 34, 36. See *Donahoo v. Board of Education*
(1952), 413 Ill. 422.) We conclude the notice and bill of
particulars fairly apprised the plaintiff of the basis of his
dismissal.

The plaintiff next argues that the provisions of section
24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122,
par. 24—12) were not complied with because the board
failed to vote to dismiss him, and to hold its hearing and
render a decision before the effective date of dismissal.
This is without merit. First, at a special meeting March 25,
1974, the board voted not to rehire the plaintiff. The
following day, a letter, entitled "Notice of Dismissal" and
bearing the signatures of the board president and the
superintendent, was sent to the plaintiff. The minutes of
the meeting and the letter are clearly a part of the record.
Second, although section 24—12 clearly requires the
hearing to be held and decision rendered before the date of
dismissal, we believe where a party has not only acquiesced
without objection in but also has been at least partially
responsible for delay, that party may not later invoke the
statute and object to jurisdiction. The plaintiff is not
candid when he states "the record shows that all of the
delay *** was attributable to [the] Defendant" board.
The record shows plaintiff's attorney agreed "that the
hearing may proceed past the proposed effective date of
dismissal of May 31st, 1974." The record indicates further
the board attempted to accommodate both attorneys'
schedules, and that the plaintiff did not object to delays
until August 2, 1974, at which time his attorney stated
that the plaintiff felt the continuance until August 16 was
too long. There are no explanations for the delay of three
months between the date of dismissal and the date of
decision on August 28, 1974. But, given plaintiff's
apparent acquiescense, at least up to August 2, we
conclude he waived the statutory time limit. The plaintiff

cites *Cummings v. Daley* (1974), 58 Ill. 2d 1, and *Szkirpan v. Board of Education* (1975), 29 Ill. App. 3d 1047, as controlling, whereas the board cites *Miller v. Board of Education* (1962), 37 Ill. App. 2d 451, as supportive, leaving one with the impression they clash. These cases are not in conflict as *Szkirpan v. Board of Education* (1975), 29 Ill. App. 3d 1047, 1051, correctly implies. Rather in *Cummings* and *Szkirpan,* the governmental agencies were responsible for the time-tolling delay. In *Miller,* the court found the record devoid of dilatory conduct by all parties; hence, a party should not be permitted to take advantage of this; otherwise the party would intentionally engage in delay. 37 Ill. App. 2d 451, 454.

Plaintiff also contends the board failed to make findings adequate to sustain its decision to dismiss him, and that it wrongly took its final action in closed session. The three-page, handwritten findings of the board were made during a recess in the last hearing on August 28, 1974, and made known to plaintiff's counsel upon the board's return to the "open" hearing. Reading of the findings was waived by plaintiff's counsel. Upon the findings' admission into evidence, the members of the board present (one was absent) were asked if they had signed the findings dismissing the plaintiff. Each of the six answered yes.

The findings consisted essentially of a restatement of the charges in the notice of dismissal and bill of particulars, quoted above. The second charge, as well as subparagraph (a) of the fourth charge (see the bill of particulars), had been stricken so the findings referred to the first, third and fourth charges. We believe they adequately support the board's decision and provide a basis for judicial review. The plaintiff maintains *Reinhardt v. Board of Education* (1975), 61 Ill. 2d 101, requires reversal here, but we do not agree. In that case, the board of education made no findings but simply reached a

decision. *Reinhardt* does not say, as the plaintiff argues in his brief, that the findings must specify what evidence the board accepted and rejected. (*Chicago Junction Ry. Co. v. Illinois Commerce Com.* (1952), 412 Ill. 579, 583-84.) Rather, this court in *Reinhardt* said:

> "It is clear that a decision by an administrative agency must contain findings to make possible a judicial review of the agency's decision. The Supreme Court in *Securities and Exchange Com. v. Chenery Corp.,* 318 U.S. 80, 94, 87 L. Ed. 626, 63 S. Ct. 454, described the requirement stating that 'the orderly functioning of the process of review requires that *the grounds* upon which the administrative agency acted be clearly disclosed and adequately sustained.' " (Emphasis added.) (61 Ill. 2d 101, 103.)

The board, in its findings, has clearly set out those grounds. *Cf. Dendor v. Board of Fire & Police Commissioners* (1973), 11 Ill. App. 3d 582, 588, where findings justifying impairment of first amendment rights of a government employee were deemed insufficient, and *Kozsdiy v. O'Fallon Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 173, 177, where the court found the finding "guilty as charged" insufficient because no written charges existed although that court noted that, had written charges existed, they could have been incorporated by reference.

The plaintiff's assertion that the board took final action in closed session in violation of section 2 of the Open Meetings Act (Ill. Rev. Stat. 1973, ch. 102, par. 42) must also fail. Section 2 prohibits any final action being taken in closed session. It does not prohibit "holding closed sessions to consider information regarding appointment, employment or dismissal of an employee." The record reveals only that the board recessed to draw up the signed findings in closed session. Upon returning to open

session, each board member publicly indicated his vote on the dismissal by acknowledging his signature on the findings. This is not in violation of the statutes, and is similar to *Jewell v. Board of Education* (1974), 19 Ill. App. 3d 1091, 1094-95, where the board went into executive session, was polled and found to unanimously agree not to rehire a teacher, entertained a motion to that effect, prepared the motion, and returned to open session where the motion was read. Then each member, by roll call, voted in favor of the motion. The appellate court found this consistent with the statute and so do we.

We reach, then, the issue of whether the decision of the board was against the manifest weight of the evidence. The board found that the causes for the charges were irremediable and justified the plaintiff's dismissal. Since the causes were irremediable, the board concluded, it was unnecessary to give the plaintiff a reasonable warning. (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.) The specific issue is whether the causes for the charges were irremediable. The following evidence was presented to the board.

Five students testified that the atmosphere of plaintiff's classes had deteriorated during the fall of 1973. Rowdiness increased. Plaintiff's classes were conducted poorly: he failed to answer questions, stimulate interest, prepare materials and maintain discipline. He frequently struck or "tapped" students with a yardstick or meterstick. Some or all of the students testifying mentioned several specific instances of difficulties the plaintiff was involved in, or in which he failed to take appropriate action. According to this evidence, the plaintiff refused to admit mistakes after he was shown to be wrong in his mathematics course; he either allowed or ignored penny rolling in class; he chased, caught and held, in a "choking hold," a student named Tracy Joyce; he squared off with and slapped Gloria Spearman, a student; and he refused to give John Zalaker, a student who testified, permission to

go to the library. (Young Zalaker testified that he then asked plaintiff for permission to go to the principal, and when plaintiff refused to let him go, the youngster went anyway.)

Roger Schoenhardt, a teacher in defendant's school district, testified that he taught classes in the same room as plaintiff, but immediately before and after, and that the room was clean before but invariably strewn with "wrappers and other debris" after plaintiff's class. He also said he never had any discipline problems after taking over plaintiff's mathematics course when the latter was relieved.

David Kuetemeyer, principal of the school during the 1973-74 school year, testified he wrote plaintiff six letters or memoranda regarding the disciplinary and teaching problems plaintiff was having in his classroom. The letters were in response to things Kuetemeyer had actually observed in plaintiff's classes, such as two students slapping each other, students throwing paper, students engaged in a tug-of-war over a pencil in front of plaintiff while he was talking to another student; in response to the unclean state of plaintiff's classrooms after his class; and in response to his method of teaching. Kuetemeyer said he gave specific suggestions, regarding noise level, method of instruction, dispensing of discipline, paddling policies, and other matters, to plaintiff, who was receptive to the suggestions. Several letters were required, according to Kuetemeyer, because there was no actual improvement in the conduct of plaintiff's classes. One of the last letters was in response to Kuetemeyer's observing plaintiff leaving the study hall while holding Tracy Joyce off the floor and around the neck. Kuetemeyer also testified that plaintiff admitted slapping Gloria Spearman because she "cursed at him" (there is a question as to whether the "cussing" occurred before or after the slap), and that plaintiff was sincere in his efforts and never antagonistic towards Kuetemeyer. Kuetemeyer admitted giving plaintiff a fairly

positive evaluation in the fall of 1973. He also said a paddling policy existed in the school district and had been publicized in the school: a student voluntarily bends over and holds his or her ankles and is then paddled.

The superintendent of the Buckley-Loda Community School District, Arthur Carlton, testified he noticed a general decline in the plaintiff's teaching effectiveness in the middle of October 1973: "little interchange" between the plaintiff and students in his history class, no respect for or attention to the plaintiff in his mathematics class, and much noise in his study hall. Carlton said the plaintiff made an "earnest" effort to improve his teaching and attempted to implement Carlton's suggestions, but ultimately failed to improve. Although Carlton and the plaintiff had frequent conferences, the superintendent testified that by Christmas 1973 the discipline had deteriorated significantly: lack of attention, rowdiness, book throwing, and students out of their desks. In the spring of 1974, Carlton prepared a "formal report" which, he said, indicated that the plaintiff angered easily, spoke loudly and grammatically poorly, executed his lessons badly, showed no interest in the course subject nor even in the teaching profession, and was unconcerned with basic teaching techniques. Carlton also testified that he saw plaintiff chase, catch and drag, by his neck, John Zalaker back to the study hall. Parents he conferred with, Carlton said, asked that their children be transferred from his classes. Carlton conceded the plaintiff was cooperative and had a reputation for honesty.

On behalf of the plaintiff, four students testified they had him for American history, and that he was interesting and knew his subject, helped and showed an interest in the students, tried different teaching methods and never struck anyone in that class. A fifth student, who had the plaintiff for mathematics, said the plaintiff was a good teacher who never struck but "tapped" students with the meterstick,

although the plaintiff slapped Gloria Spearman and chased Tracy Joyce.

William Waterman, father of one of the students who testified for the plaintiff, related that he was the one who asked board member James Flanigan, "What's this you trying to get rid of Mr. Grissom again?" Flanigan's reply was, "What do you mean again? We never have stopped."

The plaintiff himself gave the following testimony. He had been a teacher, prior to the 1973-74 school year, for 14 years, with 10 of those years spent in the defendant's school district. He had been hired to teach agriculture, and was then given an honorable termination because the agriculture course was terminated. He successfully sued to be reinstated. For the year 1973-74, he was not notified until late August 1973 that he would be teaching. (June 15 is the usual final date of notice to teachers.) He was surprised to learn he would be teaching mathematics. He was on cordial terms with both Carlton and Kuetemeyer.

Plaintiff admitted striking students with the meter-stick, and conceded the occurrence of domino playing, penny rolling and coat throwing in his classes. He denied choking or in any way harming Tracy Joyce, but held Tracy, after chasing and catching him, around his neck and under his shoulder, and then placed him at Kuetemeyer's feet; he also spanked Tracy twice. Plaintiff claimed the only person he slapped was Gloria Spearman, who had refused to stop tapping the radiator with her foot, and cursed and swung at plaintiff after he moved her foot away from the radiator but before he slapped her. He refused to give permission to John Zalaker to go to the library because he had previously caught the student playing cards there. The plaintiff told him he could see the principal after school, but the youngster went anyway and the plaintiff followed. The plaintiff contended that Eddie Allen's recall of the plaintiff's alleged refusal to admit a mistake was inaccurate. Initially, plaintiff did not under-

stand Eddie's point, but once he did, he referred Eddie to the teacher's edition of the textbook which contained the correct answer.

Daniel Schneider, also a teacher in the defendant's school district, testified that he saw the plaintiff taking Tracy, a disciplinary problem, to the office in a manner that was not injurious to Tracy. He also said that, though the plaintiff could be moved to anger, he "got along reasonably well" with others.

Finally, the board allowed into evidence the taped depositions of two teachers. Robin Ledbetter, a teacher since 1949, a colleague of plaintiff, and sometime administrator, stated that the plaintiff was cooperative, got along with and had the respect of other teachers, and was interested in the students. He also said that in his view the charges against the plaintiff, presented to Ledbetter hypothetically, were of a remediable nature.

Robert Derry, also a colleague of the plaintiff, a teacher for 11 years and father of one of plaintiff's students, found plaintiff cordial and friendly. A conference with the plaintiff, Carlton and Derry and his wife, concerning their daughter's problems with mathematics, had been beneficial.

In *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, this court stated:

> "The board's findings are not, of course, immune from judicial review. The court function, however, is limited, and does not permit substitution of the court's judgment for that of the board. Rather, the board's findings must be sustained unless those findings are contrary to the manifest weight of the evidence. [Citations.] The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have

been corrected had the teacher's superiors warned her. [Citation.] Uncorrected causes for dismissal which originally were remediable in nature can become irremediable if continued over a long period of time."

(Accord, *Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 442.) Plaintiff's contentions are that the charges against him were remediable, and that he was entitled to a warning, which both sides agree was not given.

We agree. The three standing charges of failure or inability to maintain discipline, inability or unwillingness to convey proper classroom instruction, and failure or refusal to act upon suggestions or instructions of the principal or superintendent, as well as the cited specific instances attributed to plaintiff, are all of a remediable nature. The charges are serious and there is evidence to support the charges. But the board has failed to demonstrate that the damage to the students, faculty or school has been of such a severe nature as to justify not giving the required warning (Ill. Rev. Stat. 1973, ch. 122, par. 24—12); and it has failed to show that the conduct resulting in that damage could not have been corrected even if the warning had been given. Had the plaintiff been "given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges" (Ill. Rev. Stat. 1973, ch. 122, par. 24—12), the record here might support the board's discharge of plaintiff. However, the plaintiff was not given that warning; hence, he was denied the opportunity to confront and correct an apparently serious situation. The evidence discloses the receptivity of the plaintiff to his superiors' instructions and suggestions. They admit as much. They also concede he cooperated with them in attempting to implement their suggestions. The evidence is conflicting apropos of discipline and effective instruction. Our role is not to resolve conflicting evidence, but rather to determine if the

decision reached was contrary to the manifest weight of the evidence. To the extent that the board determined the causes for the charges were irremediable, we find the decision was contrary to the manifest weight of the evidence. Although there are some similarities to the facts of *Gilliland,* one significant difference stands out. The teacher there had a much longer period to correct her problems. Moreover, the damage there compounded into irremediability over the years. Here the plaintiff's problems arose only after the academic year had started. His dismissal, without the required warning, after several months is clearly distinguishable from *Gilliland.*

We conclude the board was without jurisdiction to dismiss the plaintiff because "the giving of notice of remediable causes is jurisdictional and \*\*\* the failure \*\*\* to give such a warning \*\*\* prevents it from acquiring jurisdiction." (*Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 443.) For these reasons, we reverse the judgments of the appellate and circuit courts.

*Judgments reversed.*

MR. JUSTICE UNDERWOOD, dissenting:

In my judgment our opinion in *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, is dispositive of this case and requires affirmance of the judgments of the trial and appellate courts, which upheld the action of the board of education in discharging plaintiff. However, if the reasons for his discharge were remediable and failure to give plaintiff prior notice thereof invalidates his discharge, as my colleagues now hold, I do not understand why it is necessary for them to discuss the other issues which are so extensively treated.

The board of education found the conduct of plaintiff resulting in his discharge was not remediable. The trial and appellate courts held that finding was not contrary to the manifest weight of the evidence, and I agree. My colleagues

acknowledge "The charges are serious and there is evidence to support the charges" (75 Ill. 2d at 332), but then proceed to hold the failure to warn him denied plaintiff "the opportunity to confront and correct an apparently serious situation" (75 Ill. 2d at 332). In view of the testimony that the principal had, during the 1973-74 school year, written plaintiff six letters or memoranda regarding that situation without noticeable improvement, the finding by my colleagues that the causes for discharge were remediable seems to me completely unrealistic.

It will be quite difficult for school boards to discharge their responsibilities to provide effective educational environments if their findings are to be treated as cavalierly as my colleagues have treated these.

I would affirm the judgments of the trial and appellate courts.