LEILA LOWE, Plaintiff-Appellant, *v.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 78-1933

Opinion filed September 4, 1979.

350

McGLOON, J., dissenting.

Michael Anthony Lowe, of Chicago, for appellant.

Michael J. Murray and Patrick D. Halligan, both of Law Department, Board of Education, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Leila Lowe (plaintiff), a tenured teacher at the John M. Gregory Elementary School, was dismissed from her position by the Board of Education of the City of Chicago (Board). On administrative review (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), the Board was affirmed. Plaintiff appeals.

Plaintiff contends: (1) the Board did not have jurisdiction to dismiss her; (2) the findings of the Board are against the manifest weight of the evidence; and (3) the dismissal was not proper because two of the three members of the committee who heard the evidence at the hearing subsequently voted at the full Board meeting against their own recommendation of dismissal.

On January 11, 1978, the Board, by resolution, adopted the order of Joseph P. Hannon, general superintendent of schools, that plaintiff be suspended from duty, pending trial, and approved the following charge and specifications brought by Hannon against plaintiff:

"1. During the period October 5, 1976, to June 5, 1977, Leila Lowe failed to maintain discipline in her classroom in that, among other things: children wandered in and about the corridors and lavatories; students threw books across the room, played and fought in the classroom; students were noisy, uncontrolled and caused disturbance to the rest of the school.

2. During the period October 5, 1976, to June 5, 1977, Leila Lowe

corporally punished students contrary to Board Rule 6—22.

3. That during the period October 5, 1976, to June 5, 1977, Leila Lowe failed to promote an adequate program of instruction in that among other things: the environment was not conducive to learning, there was little discipline, there was lacking any effective teacher-student rapport, lesson plans were inadequate or not understandable, the classroom was disorganized, there was inadequate record keeping.

4. That on January 5, 1977, while assigned to John M. Gregory School, she was served with an E-1 warning notice that her work was unsatisfactory and that failure to remove her deficiencies may result in charges. After she received the warning notice, she repeatedly failed and refused to follow the recommendations, instructions and directions of her superiors for the correction of her deficiencies and improvement of her teaching performance. Her teaching deficiencies were deemed irremediable by her superiors and on March 23, 1977, she was served with an E-2 notice that her efficiency rating as a teacher was unsatisfactory. On April 19, 1977, an E-2 conference was held in the Bureau of Teacher Personnel to discuss her unsatisfactory rating."

Three members of the Board were appointed to the trial committee. At the hearing, Eugene Singletary, aged 13 years, testified that he was a student in plaintiff's class during 1977, the previous year. He stated that plaintiff hit him every day with either petitioner's (Board's) exhibit No. 8 or a curtain rod. Petitioner's exhibit No. 8 is five pieces of balsa wood about a foot long nailed together and wrapped with masking tape. Singletary stated that he would tell the principal when he was hit by plaintiff. He further testified that students threw books in the classroom and that he had been hit in the face with a book.

Shirley Jordan, aged 14 years, was also in plaintiff's class during 1977. Jordan testified that plaintiff hit students on their hands or posteriors with exhibit 8 and also with a curtain rod. Jordan was never hit with a curtain rod, but she testified that plaintiff hit her arm and back with a stitching (extension) cord. After she was hit, she got her coat and went to the principal's office. Subsequently, plaintiff arrived at the principal's office and in the presence of the principal, Peggy Jackson, plaintiff called Jordan, "a stinking liar and nothing but a liar." Jordan testified that at lunch, plaintiff called her students "hogs" and "pigs." The students ate lunch in the classroom and often spilled food.

Robert Jordan, now acting assistant principal at Gregory School, testified that at the time in question he was a guidance counselor at the school. Part of his job was to see that each teacher had lesson plans available for substitutes. He could not find plaintiff's lesson plans. He also

received notice from plaintiff that a piano in her classroom had been overturned by students and destroyed by the fall. Sometimes plaintiff's classroom would be noisy, but not always. Jordan stated he would go to plaintiff's classroom regularly, sometimes twice a day. It was part of his duties to help with the discipline.

Henry C. Springs, Jr., District Superintendent of the Chicago Board of Education, District 8, testified that he visited plaintiff's classroom on February 2 and 17, 1977, after plaintiff had received an "E-1" notice. He found the class to be totally disorganized. There were no lesson plans and students were running and throwing objects. He felt plaintiff maintained an unattractive classroom in that the bulletin boards were half torn off, there were no charts or interesting materials, there were no centers of interest such as a library corner or a science corner. In Springs' opinion, plaintiff is not capable of handling a classroom.

Peggy W. Jackson, principal of the Gregory School, testified that she issued an "E-1" notice to plaintiff on January 5, 1977. In that notice Jackson stated that plaintiff's efficiency rating was unsatisfactory for the following reasons:

"Failure to plan and implement a program of instruction."

"Failure to assume responsibility for effective classroom management."

"Failure to provide and maintain an attractive, pleasant classroom environment conducive to learning. Inadequate record keeping."

"Failure to follow school policies and procedures."

Jackson elaborated on these reasons during the hearing stating that plaintiff failed to record lesson plans, there was no discipline or control in plaintiff's classroom, she failed to utilize the bulletin boards, and the attendance book was not adequately maintained. Jackson stated that she went to plaintiff's class almost every day. She made three formal visits and made a report on those occasions.

Jackson further testified that one day Shirley Jordan came running to her office crying, saying she (Jordan) had been hit by plaintiff with a yellow extension cord. Jackson went upstairs to get plaintiff. As they entered the office where Shirley was seated, plaintiff "screamed at her [Shirley] and called her 'A dirty stinking liar. You know I did not hit you with the extension cord and I should hit you now for lying.' " Plaintiff admitted to Jackson that she called the children "hogs" to relieve herself of tension. Plaintiff further told her that when the students behaved as hogs and pigs plaintiff would call them that. Jackson further testified that she had seen plaintiff hit Eugene Singletary with exhibit 8.

On March 21, 1977, Jackson served plaintiff an "E-2" notice which stated that since plaintiff had not made the suggested improvements, her

efficiency rating must be recorded as unsatisfactory. The charge and specifications issued by Superintendent Hannon stated that the "E-2" notice was served on March 23, 1977. The charge and specifications were amended, without objection, to reflect the March 21, 1977, date. On April 19, 1977, a conference was had pursuant to the "E-2" notice. Jackson, two Board personnel, and plaintiff were present. No improvements in plaintiff's classroom techniques were seen. Plaintiff was not removed at the end of the school year, but she was reported to the district office in September.

Mozeller Jackson testified on behalf of plaintiff. She stated that her son had been in plaintiff's class last year. His behavior had improved while in plaintiff's class and plaintiff had encouraged her son to graduate.

Mose Williams, president of the Education Advisory Counsel, stated that he was at the Gregory School almost every other day. He saw nothing unusual about plaintiff's class, but he did not enter her classroom. He had never received any complaints about plaintiff.

Plaintiff testified that she received her bachelor's degree from Roosevelt University in 1973 and her master's degree in 1975. She needs six hours more to receive a master's degree in learning disabilities. She had been employed by the Board for five years and had been teaching at the Gregory School for four years. In 1939, 1940 and 1941 plaintiff taught school in Georgia. At the Gregory School, plaintiff was assigned to grade level K, but her class included levels J and L. The ages of the students ranged from 12 to 14. Level K is equivalent to the sixth grade.

Plaintiff further testified that she did not receive any teaching materials, such as textbooks, until October. Until then she used her own materials. The behavior of the students was negative. Plaintiff admitted she had discipline problems with some of the students in her class. She made Jackson and Jordan aware of those problems. Plaintiff stated she would send students to the principal's office. The students would return very cheerful and smiling. Their behavior would not improve after being sent to the principal's office. Plaintiff asserted that she decorated her bulletin boards and was even complimented on one in particular. She denied that she ever used corporal punishment. She admitted that there was a curtain rod in her room, but she only used it as a pointer. Exhibit 8 was in her classroom, but she never struck anyone with it. She would use exhibit 8 to hit the desk of a student to gain his attention. Plaintiff also denied that she called her students "hogs." She deposited with Jordan her packet of lesson plans for the substitute and she kept her attendance book up-to-date. Plaintiff further stated that she received the "E-2" notice on March 23, 1977.

On March 15, 1978, the trial committee filed its report with the Board. The three members of the committee found that the written charge and

specifications were properly filed, plaintiff was properly suspended, the charge and specifications against plaintiff were proven, and plaintiff's teaching deficiencies were deemed irremediable. The trial committee recommended that their findings be adopted by the Board and that plaintiff be dismissed. At a full Board meeting on March 15, 1978, the Board adopted the findings of the trial committee and resolved to dismiss plaintiff from service by a seven (yes) to three (no) to one (abstain) vote. One member of the trial committee had abstained and one had voted against the dismissal.

■■ Plaintiff initially argues that the Board did not have jurisdiction to dismiss her because she did not receive the "E-2" notice by the end of the 51st day after issuance of the "E-1" notice. The collective bargaining agreement between the Board and the Chicago Teachers Union provides that certain procedures are to be followed when rating the efficiency of teachers in the school system. The agreement also states that these procedures are efficiency rating procedures and do not limit the right of the Board to remove any teacher for cause. (Agreement Between the Board of Education of the City of Chicago and Chicago Teachers Union, August 31, 1977, section 39—4.4.) Moreover, the supreme court has held that a collective bargaining agreement clause regarding teacher discharge neither expands nor restricts the statutory provisions on that subject. (*Board of Trustees v. Cook County College Teachers Union* (1976), 62 Ill. 2d 470, 475-76, 343 N.E.2d 473; *Illinois Education Association v. Board of Education* (1975), 62 Ill. 2d 127, 130-31, 340 N.E.2d 7.) Consequently, we find this argument to be without merit.

The Administrative Review Act provides that the agency's findings on questions of fact are *prima facie* true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274.) Therefore, when reviewing proceedings under this Act, this court must determine whether the procedures required by law were followed, and if so, whether the decision of the agency is against the manifest weight of the evidence. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) "Neither the appellate court nor the trial court may substitute its judgment for that of the administrative agency." (*Davern,* 47 Ill. 2d 469, 472.) "A particular administrative finding may not be adjudged against the manifest weight of the evidence unless from the record it appears that an opposite conclusion is clearly evident." *Rolando v. School Directors* (1976), 44 Ill. App. 3d 658, 661, 358 N.E.2d 945, *appeal denied* (1977), 66 Ill. 2d 628.

Before the power of dismissal may be exercised against a teacher with tenure, the Board must comply with the statutory procedures specified in section 34—85 of the School Code. (Ill. Rev. Stat. 1977, ch. 122, par. 34—85.) That section provides in part:

"Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher or principal shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges."

In the instant case plaintiff maintains that the causes for dismissal were remediable, and the Board was required to give her proper warning and an opportunity to take corrective measures. The Board contends the causes were irremediable and, therefore, no warning notice was required.

■■ "The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned her. [Citation.] Uncorrected causes for dismissal which originally were remediable in nature can become irremediable if continued over a long period of time." (*Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322; see also *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398; *Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 442, 367 N.E.2d 1337.) Moreover, many causes which may be remediable when standing alone, may well be irremediable in combination with others. *Gilliland*, 67 Ill. 2d 143, 154.

■■ The Board has discretion to determine, in the first instance, whether a cause is remediable and to confirm that finding at the conclusion of the hearing. (*Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 742, 347 N.E.2d 270.) The causes in the instant case involve deficiencies in discipline, instruction, and teaching environment. These could in certain circumstances be deemed remediable. Here, however, the specifications to the charge expressly stated that the causes were irremediable due to plaintiff's repeated failure and refusal to follow the recommendations, instructions, and directions of her superiors. In addition, one of the specifications charged plaintiff with corporal punishment of students in violation of Board Rule 6-22. Corporal punishment has been held to be an irremediable cause for dismissal. (See *Welch v. Board of Education* (1977), 45 Ill. App. 3d 35, 358 N.E.2d 1364, *appeal denied* (1977), 66 Ill. 2d 628; *Rolando*, 44 Ill. App. 3d 658, 662; *Fender*, 37 Ill. App. 3d 736, 742.) In our opinion, the Board made a proper initial determination that the causes were irremediable.

The inquiry now turns to whether the Board's findings that the evidence (1) proved plaintiff guilty of the charge and specifications and (2) confirmed the causes to be irremediable are against the manifest weight of the evidence. The testimony of three witnesses, two students and the principal, demonstrates that plaintiff struck students as a regular means of discipline. Plaintiff denied this. Two witnesses, a student and the principal, testified that plaintiff called students "hogs" and "pigs." The

District Superintendent stated that plaintiff is incapable of handling a classroom. The principal related that she issued an "E-1" notice and later an "E-2" notice and had several conferences with plaintiff. No improvements were noted.

■■ In light of all the evidence, we cannot say that the Board's finding that plaintiff was guilty of the charge and specifications is against the manifest weight of the evidence. At best we find here only contradicting evidence not sufficient to require or to justify reversal.

■■ As to the question of irremediability, the record demonstrates repeated incidents of corporal punishment administered by plaintiff in direct violation of a Board rule. We find this cause to be irremediable, and by itself sufficient to require plaintiff's dismissal. The damage which occurs to students who receive such punishment cannot be repaired or remedied by any amount of subsequent warning. That damage is irremediable. *Welch*, 45 Ill. App. 3d 35, 38.

■■ In certain instances, the remaining causes (deficiencies in discipline, instruction, and teaching environment) could possibly be deemed remediable. (See *Grissom*, 75 Ill. 2d 314.) However, in the instant case the record indicates a complete lack of desire or ability on the part of plaintiff to change, improve, or even recognize the need thereof. Her testimony consists mainly of complaints directed toward the school and her students. Plaintiff does not indicate that she could or would improve her handling of discipline problems, instructional technique, or learning environment. Her superiors stated that after repeated conferences with her, they could find no improvement and deemed her deficiencies to be irremediable. In our opinion, this evidence considered in conjunction with the evidence of corporal punishment requires our determination that the findings of the Board as to irremediability are not against the manifest weight of the evidence.

■■ Plaintiff's final contention is that her dismissal was not proper because two of the three committee members who heard the evidence voted against the adoption of their own report and recommendation for dismissal. Plaintiff cites no legal authority in support of this argument. We believe that none exists. Actually the record shows that at the full Board meeting, one of the members of the trial committee voted against adoption of the report and dismissal of plaintiff and one member abstained. There is no explanation for this behavior. However, we are constrained to find that the statutory requirements for dismissal have been met. Section 34—85 of the School Code provides that the teacher may be removed "only by a vote of a majority of all members of the board, upon written charges presented by the general superintendent of schools, to be heard by the board or a duly authorized committee thereof". (Ill. Rev. Stat. 1977, ch. 122, par. 34—85.) The two committee members, one who

voted against dismissal and one who abstained from voting, did not expressly recant their previous report and recommendation. Since the Board followed the required statutory procedures and voted by a majority to dismiss plaintiff, we see no error in this regard.

The judgment appealed from is affirmed.

O'CONNOR, J., concurs.

Mr. JUSTICE McGLOON, dissenting:
I respectfully dissent from the opinion of the majority and would reverse the trial court's decision affirming the Board. I believe the Board wrongfully discharged plaintiff for several reasons. First, I believe that the charges were remediable and that the warning given plaintiff was insufficient under the statute. I recognize that uncorrected causes for dismissal which originally were remediable in nature can become irremediable if continued over a long period of time and if the teacher refuses or fails to remedy them. (*Glover v. Board of Education* (1974), 21 Ill. App. 3d 1053, 316 N.E.2d 534.) I do not believe the instant record supports the conclusion that the alleged deficiencies in discipline, instruction, and teaching environment existed for such a long period of time that they became irremediable. It is true that Robert Jordan, acting assistant principal at the Gregory School, testified that he had occasion to observe plaintiff's class during the school year of 1976-77 and that on many occasions the students were noisy, the classroom was in disarray, and there was a lack of discipline. However, the only other witnesses who testified against the plaintiff and who provided specific dates testified as to incidents which occurred in February or March of 1977. This is unlike the situation in *Glover*, where the record showed that the plaintiff was on probation and had that probation extended in February of 1971; was informed by the school in April and again in September of 1971 that the school was concerned with plaintiff's discipline problems; and was warned in November of 1971 by the principal that if there was no improvement he would not recommend that plaintiff be reemployed. In *Glover*, the plaintiff received numerous warnings and failed to heed these warnings over a long period of time.

I also believe the charges pertaining to corporal punishment were remediable. Within the broad delegation of parental authority to a teacher under section 34—84a of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 34—84a) is the authority to inflict corporal punishment on a student if such punishment is warranted under the circumstances. (*People v. DeCaro* (1974), 17 Ill. App. 3d 553, 308 N.E.2d 196.) The majority correctly points out that in certain cases, corporal punishment has been

held to be an irremediable deficiency. However, I believe each of the cases cited by the majority to be distinguishable from the instant situation. In *Welch v. Board of Education* (1977), 45 Ill. App. 3d 35, 358 N.E.2d 1364, a teacher paddled a student twice during a 20-minute period. The second paddling, administered for no reason other than the fact that the first paddling did not hurt enough, left red marks and bruises on the student's buttocks. In *Rolando v. School Directors* (1976), 44 Ill. App. 3d 658, 358 N.E.2d 945, a teacher was shocking his sixth grade students into submission on a regular basis with an electric cattle prod. In *Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 347 N.E.2d 270, the plaintiff struck students in the face with his hand on four occasions. One witness testified that the plaintiff slapped her head against the table, held her by the hair, then slapped her in the face 10 to 13 times causing cuts inside the witness' mouth. I believe the corporal punishment in the above cases to be of much greater severity than that in the instant case. In each of the above cases the corporal punishment was unwarranted under the circumstances and a clear physical abuse of the students. In addition, the corporal punishment in the above cases is clearly documented by the testimony of the witnesses. The instant testimony concerning corporal punishment is vague and sketchy. None of the witnesses who testified as to the instant corporal punishment indicated the force of the blows, whether the person hit cried out, suffered any physical injuries or bruises, or even felt any pain. None of the witnesses described the curtain rod that was purportedly used to strike students. The ruler which plaintiff is said to have used is part of the record on appeal and of a very light weight. It is not an instrument which can inflict great pain.

In essence, I believe that if the Board of Education is to terminate a tenured teacher who has not received the prescribed statutory notice, it must produce a record which clearly substantiates that the charges are irremediable. I find the instant record lacking. My conclusion is greatly influenced by the fact that two of the three members of the trial committee who heard that evidence and sat on the Board did not vote in favor of their own report which recommended dismissal. If the majority of the trial committee cannot accept the decision of the Board, I cannot accept the decision either. For the above reasons, I would reverse the decision of the trial court.