BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 131, KANE COUNTY, Plaintiff-Appellee, *v.* ILLINOIS STATE BOARD OF EDUCATION *et al.,* Defendants-Appellants.

Second District No. 82—256

Opinion filed February 2, 1983.

Wayne Schwartzman, of Hirsh & Schwartzmann, P.C., of Chicago, for appellants.

Lambert M. Ochsenschlager, Wayne F. Weiler, and Craig S. Mielke, all of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Robert Slavin, was a tenured elementary teacher in School District No. 131, Kane County, Illinois, and was discharged by the Board of Education (board) pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—12). After an evidentiary hearing before an administrative hearing officer, Slavin was ordered to be reinstated to his full-time teaching position. The board then sought administrative review before the trial court of Kane County. The trial court reversed the reinstatement order of the hearing officer. Slavin appeals.

Robert Slavin began teaching in 1961 and taught at Dieterich School since 1966. He was tenured and at the time in question was teaching fourth grade. Prior to receiving his letter of dismissal Slavin had received no notice of any employment deficiencies.

On March 18, 1980, the board issued a resolution dismissing

Slavin. The board issued a bill of particulars that alleged seven points. Slavin was charged with: (1) being cruel to students entrusted to him; (2) causing deliberate and irreparable physical and emotional injury to students, in that he did on numerous occasions inflict unlawful corporal punishment upon four named students and, in doing so, violated School Board Policy No. 5.06 and 5.07; (3) having summarily expelled students from school in violation of school board policy and the Illinois School Code; (4) having been negligent; (5) having been insubordinate in not following instructions of supervisors, school board policies or laws of the State of Illinois regarding discipline of students; (6) that he was not qualified to teach, and; (7) that it would be in the best interests of the school that he be dismissed.

Policy 5.06 provides that after oral instructions and techniques have failed a teacher may "direct the pupil toward a desired location but should refrain from the use of sufficient force to severely hurt the pupil." Under the heading of corporal punishment, board policy provides that the principal or other person designated may strike the pupil with an open hand in an area below the neck only after other types of influence have failed to gain the desired goal. A student may be spanked only with an open hand or a paddle on an area below the neck after arranging for a reliable witness to be an observer.

Dieterich School Policy 5.07 provides that a child should never be sent home without prior approval from the office. Slavin was charged with having improperly punished four students, Gary Lay, Tammy Parker, Maurice Payne and Rex Rose. Further, he was charged with having encouraged and permitted two of those students to leave the school premises during the school day without notifying his supervisors or the students' parents.

The testimony adduced at the hearing will not be reiterated at length here, but will be discussed together with the issues on appeal.

Slavin's contention on appeal is that the trial court's finding was contrary to the manifest weight of the evidence. (*Werner v. Community Unit School Dist. No. 4* (1963), 40 Ill. App. 2d 491, 495, 190 N.E.2d 184, 186.) He contends that the teacher's tenure law acts as a shield from his being dismissed for trivial, political, capricious or arbitrary causes. (*Kallas v. Board of Education* (1973), 15 Ill. App. 3d 450, 304 N.E.2d 527.) In the case at bar the board made a determination that Slavin's conduct was irremediable and he should be dismissed without written warning. Subsequently a hearing officer was appointed as required by statute. (Ill. Rev. Stat. 1979, ch. 122, par. 24—12.) The hearing officer determined that Slavin's cause for discharge was remediable and he was improperly dismissed because he

had not been served with a prior written warning stating specifically that if his conduct was not changed it would result in charges being brought. It also found that he should be restored to a position similar to the one he had prior to his dismissal and that he be made whole for all employment benefits and losses suffered as a result of the dismissal.

The board appealed from the findings made by the hearing officer and the trial court reversed the hearing officer and found that Slavin was guilty of improper and illegal irremediable conduct, and no formal notice in writing need be given. The trial court made no other written findings.

■ The first question on appeal is whether or not cause for Slavin's dismissal was remediable. If it was remediable, then Slavin would have been entitled to a warning under the School Code. Ill. Rev. Stat. 1979, ch. 122, par. 24—12.

■ The test for determining whether a cause for dismissal is remediable was set forth in *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322, where the court stated:

> "The board's findings are not, of course, immune from judicial review. The court function, however, is limited, and does not permit substitution of the court's judgment for that of the board. Rather, the board's findings must be sustained unless those findings are contrary to the manifest weight of the evidence. [Citations.] *The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned her.* [Citation.]" (Emphasis added.) (Accord, *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 322, 388 N.E.2d 398; *Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 442, 367 N.E.2d 1337.)

Gilliland contended, as does Slavin, that the charges against her were remediable, and she had not been given the requisite written warning. The court in *Gilliland* noted that the complained-of-conduct extended over a four-year period and that this, together with a combination of a number of causes, was a sufficient basis for a finding of irremediability.

It should be noted that in the case at bar the complained-of-conduct was based on excessive use of force in administering punishment and instances where a child was either allowed or told to leave the classroom without Slavin having obtained parental or school supervisor's approval. However, it is important to note that unlike the situa-

tion in *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322, the complained-of-conduct in the case at bar first arose only approximately six weeks before Slavin's dismissal, not over a four-year period.

The issue of remediability was also discussed in *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398. Grissom was a tenured teacher who had been dismissed by a board that found cause for discharge was irremediable. Hence, he was not given the statutory written warning. (Ill. Rev. Stat. 1979, ch. 122, par. 24—12.) Grissom had received six letters concerning disciplinary and teaching problems that he had in his classroom from the principal over the course of the school year. Grissom was charged with a failure or inability to maintain discipline, use of unwarranted physical force, inability or unwillingness to convey proper classroom instruction, and failure or refusal to act upon suggestions or instructions of the principal or superintendent. The supreme court noted that the charges were serious and that there was evidence to support the charges but that the board had failed to demonstrate that the damage to the students, faculty or school was of such a severe nature as to justify not giving the required warning under section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12). Therefore the supreme court reversed this cause, stating that plaintiff's problems had arisen only after the academic year had started and he should have been entitled to a warning in writing so he could correct his deficiencies. The court distinguished *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322, by stating that it involved a problem with a teacher over a period of years and the teacher therefore had more time to correct her problems.

The facts of *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398, are quite similar to the case at bar, though they involved instances of corporal punishment and actual striking of students. Grissom admitted to certain acts of corporal punishment and testified that he struck students with a meterstick, held a student around his neck, spanked a student twice and slapped a student. An important similarity between *Grissom* and the case at bar concerns the time that the teacher had to work out the problem that he had. In both cases the teachers' problems arose in the same academic year in which they were dismissed. In Slavin's case the problem arose within weeks of when he was dismissed. Slavin's situation is more similar to that discussed in *Grissom* than that in *Gilliland.*

Slavin contends that the hearing officer properly found his conduct to be remediable. As previously indicated, the test for reme-

diability is "whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned [him]." *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322.

■ Considering the first point in this test the question becomes whether damage has been done to the students. Assuming *arguendo* that Slavin's conduct constituted corporal punishment because it was excessive, it could be argued that once a student has been the victim of corporal punishment the damage to that student has been done. (*Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 742, 347 N.E.2d 270.) On the other hand, in the case at bar, corporal punishment is specifically allowed by the school board rules. If it is allowed by the rules it is therefore not always irremediable conduct. Damage to the faculty or the school is even less easily measured under the above test.

■ The next question is whether the conduct could have been corrected had Slavin's superior warned him. We believe that this is a strong possibility. On January 22, 1980, just prior to the first instance of corporal punishment and dismissal of a student, Slavin's teaching performance was reviewed and apparently found to be satisfactory. The record reveals that Slavin's misconduct occurred over a period of time of approximately six weeks. In light of this, and the fact that Slavin was responsive to instructions regarding punishment from the children's parents and from his superiors, we believe that his conduct could have been corrected had he been warned of the problem.

■ In a case that did not involve corporal punishment but which did discuss when a cause is irremediable, the court stated:

> "Causes, remediable when considered alone, will be deemed irremediable where combined with other remediable causes if continued over a long period of time during which the teacher refuses or fails to remedy them. [Citations.] Accordingly, where no statutory warning has been given the evidence presented at the hearing on the charges must not only prove that the causes for discharge existed, but it must also be shown by competent substantial evidence that the causes were not remediable." (*Morris v. Board of Education* (1981), 96 Ill. App. 3d 405, 411, 421 N.E.2d 387, 392.)

*Morris* therefore requires that the board prove by competent and substantial evidence that the cause for discharge is not remediable. In the case at bar the hearing officer correctly found that the board failed to meet its burden. He specifically found that Slavin's conduct was remediable. He found that when Slavin was requested by the

board not to grab Tammy by the arm anymore or to use physical force against Gary Lay he thereafter complied. No similar request was made with regard to Rex Rose. As indicated, the record shows that Slavin taught for 17 years without any record or complaint of cruelty.

On the other hand, it should be noted that Slavin's loss of control with regard to disciplining the students in his class was not an isolated incident. Although there was testimony that the students were misbehaving at the time, it is quite possible that Slavin did use an unreasonable amount of force with the children, and he was wrong in allowing them to leave the classroom. The board contends that Slavin knew the School Code and its policy and intentionally violated that Code. Therefore they contend that they should not be required to spend weeks or months attempting to reform a teacher who wilfully violated the rules. We disagree.

The board made a finding that Slavin's conduct was "irremediable cruelty *per se*," and cited four cases in support of its finding. As the hearing officer indicated, it was not clear what was meant by the phrase "irremediable cruelty *per se*." It appears that there is some indication that the use of physical force would be considered by the board to be irremediable conduct. However, where a teacher is allowed by the rules to use the hands to direct a student to his seat, it is implicit in those rules that some physical force be used. The question of when that physical force becomes cruel is far more difficult to determine.

The four cases relied upon by the board are distinguishable, in varying degrees, from the case at bar. In *Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 347 N.E.2d 270, the teacher was accused of, as previously discussed, striking students on the face and head area. Despite having been warned by the principal, the teacher continued to strike the students. In *Rolando v. School Directors* (1976), 44 Ill. App. 3d 658, 358 N.E.2d 945, a teacher used a cattle prod to administer electric shocks to his students over a period of a month. In *Welch v. Board of Education* (1977), 45 Ill. App. 3d 35, 358 N.E.2d 1364, a teacher had paddled a student twice during a 20-minute period. The second paddling was seen as violative of the school policy on corporal punishment. In *Lowe v. Board of Education* (1979),76 Ill. App. 3d 348, 395 N.E.2d 59, a teacher had frequently struck students with an instrument made out of a curtain rod and five pieces of balsa wood wrapped with masking tape. There was also evidence that the teacher had struck a student with an extension cord. Further, the court found that the teacher had not controlled her class-

room and was disturbing the whole school. Her teaching was found to be deficient, and despite conferences and recommendations for improvement, she received an unsatisfactory rating in her evaluation. The court upheld her dismissal.

In the case at bar, each time Slavin used physical force it was to direct the student toward a desired location, to a desk, into line, or out into a hall. Unlike the four cases previously cited, there was no complaint Slavin had struck any students, and those cases are distinguishable.

With regard to the Tammy Parker incident, a number of witnesses, including Tammy, testified that she was singing and dancing in the classroom during a lesson. As such her misbehaving would warrant some action by the teacher. A witness for the board, Keith Carlson, testified that Slavin grabbed her and put his fingernails in her arm after he asked her to sit down and she had disregarded his request. While there is no justification for the infliction of scratch marks and making Tammy's arm red, it is not clear that this conduct was intentional. Both Tammy Parker and Rex Rose testified that Gary Lay had disregarded Slavin's request that he stop bothering and fighting with another student. Again, although Slavin should have used greater care in putting his hands on Gary, he was directing the student to a location after oral directions had failed. This was in accordance with section 506(c) of School Policy. Further, after Mrs. Lay requested that he not touch Gary anymore, he never did so. With regard to Rex Rose there was testimony that he received three scratch marks early in February. Slavin testified that Rose had left his seat without permission and picked up a piece of chalk or a pencil. The second incident with Rex Rose on March 7 was more serious. Rex contended that his pencil rolled under the desk behind him and that when he went to pick it up Slavin picked him up and shoved him down into his desk. However it appears that this was not intentional because, as Rex testified, he lost his balance at that time and hit his ear on the radiator and his side on the desk. Rex testified that he then started to cry and when he said he was going to go home Slavin told him to go ahead. The assistant superintendent described Rex' injuries as a bump and a scratch behind his ear and marks or bruises on his lower rib cage. Slavin testified that Rex had just gone limp and aimed for the desk rather than choosing to sit in it.

The board relies on the testimony of Dr. Scriven, professor of education at Northern Illinois University for its contention that Slavin's conduct was irremediable. Dr. Scriven's testimony indicated that the damages had already been inflicted and would not be modified by giv-

ing a warning to the teacher.

Dr. Scriven's line of reasoning has been discussed in certain court cases as well. In *Welch v. Board of Education* (1977), 45 Ill. App. 3d 35, 358 N.E.2d 1364, the court noted that there are two tests of remediability. The first, it was stated, was that no warning to the teacher may remedy damage to a student by the violation of known school policy. On the other hand, it declared, that if a warning was given, the teacher could have the opportunity to bring his future conduct within the parameter of the stated board policy. The *Welch* court followed the "damage has been done" rule. However, subsequent decisions, most notably *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 332, 388 N.E.2d 398, have relied strongly on the requirement that the board demonstrate the damage to the students, faculty or school was so severe that it could not have been corrected. In the case at bar, we believe the board failed to meet this test. Accordingly, we find that Slavin's dismissal was improper. The trial court's decision is reversed and Slavin is to be reinstated in accordance with the ruling of the administrative hearing officer.

Reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

SEIDENFELD, P.J., and REINHARD, J., concur.